WEED vs. KNORR, administrator, et al.

[Jackson, C. J., being disqualified, Judge Clarke, of the Atlanta Circuit, was appointed to preside in his stead.]

A will contained the following items : "I devise and bequeath to Augustus P. Wetter, the husband of my granddaughter, Sarah Alberta C. T. Wetter, all of my property, both real and personal, which may remain after the payment of my just debts, to hold said property in trust for the sole and separate use of my said granddaughter, Sarah Alberta, free from the debts, liabilities and contracts of her present or any future husband, during her natural life. In further trust to convey the same, during the natural life of the said Sarah Alberta, from time to time, to such persons, in such portions, and on such considerations, as she may in writing request. In further trust, upon her decease, to make such disposition of said property as she may, by any writing of a testamentary character, direct. In further trust, should she die intestate, to hold such property for the benefit of such persons as may, at the time of her said decease, come under the designation of her next of kin by the statute of distributions at that time in force in the State of Georgia :"

*Held* that, under the power contained in the will, the trustee was authorized to convey the property in fee simple, upon the written request of the granddaughter of the testatrix. By the words, "during the natural life of the said Sarah Alberta," it was the purpose of the testatrix to fix the time during which the trustee should exercise the power of sale prescribed, and not to limit the estate which he might convey to an estate during the life of the granddaughter.

(a.) In the interpretation of wills, the intention of the testator shall be diligently sought for, and effect given to the same so far as may be consistent with the rules of law. Each will must be construed for itself, and in large part depends upon its own terms and the peculiar circumstances surrounding the testator.

(b.) The decision in *Wetter, trustee, vs. Walker*, 62 *Ga.* 42, in so far as it apparently conflicts with these views, is *obiter dictum.*

(c.) A testator may, by his will, make any disposition of his property not inconsistent with the laws or contrary to the policy of the State.

January 18, 1887.

Wills. Estates. Construction. *Res Adjudicata*. Before Judge ADAMS. Chatham Superior Court. March Term, 1886.

Reported in the decision.

GEO. A. MERCER; FRANK H. MILLER, for plaintiff in error.

RICHARDS & HEWYARD; JOS. A. CRONK; T. M. NORWOOD; LESTER & RAVENEL, for defendants.

CLARKE, Judge.

In this case the court adopts, as a preliminary statement, substantially the abstract presented by Mr. Mercer, counsel for the plaintiff in error, which is as follows :

This was a bill brought to the June term, 1885, of Chatham superior court, by Edwin G. Weed, complainant, against Louis Knorr, as administrator of Conrad P. Wetter, Louis Knorr, as administrator of Meta P. Wetter, Edward T. Wetter, Louisa A. Gould, formerly Wetter, Joseph D. Weed and Joseph W. Weed. The said Conrad P., Meta A., Louisa A. and Edward T. were the only children and heirs at law of Augustus P. and Alberta C. T. Wetter, his wife.

The bill alleged that, by an indenture made May 11th, 1860, Augustus P. Wetter, executor of the last will of Margaret Telfair and trustee under the same, and Alberta C. T. Wetter, his wife, conveyed to Henry D. Weed, of Chatham county, for $6,300, two lots in the city of Savannah, described in the deed as lots 7 and 8, Eyle's tything, Heathcote ward, a copy of said deed being attached as an exhibit to the bill; that it was the mutual intention and purpose of said parties to convey lots 8 and 9, said tything and ward, and not lot 7; that the firm of which said Henry D. Weed was a member had, for more than six years previously, held and used in their business said lots 8 and 9, as tenants of Mrs. Margaret Telfair and of her executor after her death, and were in the actual occupancy and use of lots 8 and 9 at the date of said conveyance,

and Henry D. Weed desired a deed to the two lots
then occupied by his firm; that lot 7 was inserted and de-
scribed in said deed instead of lot 9 by the error and mis-
take of the draughtsman, and both the grantors and grantee,
relying upon the care and skill of the daughtsman, ac-
cepted the deed in good faith, and without knowledge or
suspicion of the mistake, and the grantee had it put upon
record; that the said Henry D. Weed continued to use
and occupy said lots 8 and 9, and to pay taxes upon them
up to the time of his death, and since his death complain-
ant had continued to occupy them by his tenants and to
pay taxes on them in good faith, and they together had
held adverse possession of said lots for more than twenty-
three years; that said lot 7, described in said deed, never
was held or claimed by said grantors, but belonged to the
estate of one John Waters, and had valuable brick tene-
ments erected upon it at the date of said deed; that said
Henry D. Weed died in Chatham county intestate in Feb-
ruary, 1875, leaving, as his only heirs, complainant and his
two brothers, the defendants, Joseph D. Weed and John
W. Weed; that his estate was large and solvent, and
in March, 1875, said three brothers entered into a family
arrangement to divide their father's estate among them,
and in pursuance thereof certain property was, on June
26th, 1875, conveyed to complainant by his two brothers,
including the said lots 7 and 8 as described in said deed
to their father, a copy of said deed of division being at-
tached as an exhibit to the bill; that said division was
based upon the deeds found among their father's papers,
and the mistake in the original deed was carried into said
deed of division, without knowledge or suspicion of the
misdescription of the property; that said Augustus P.
Wetter and his wife, Alberta, died intestate, leaving four
children, as aforesaid, their only heirs at law; that Louis
Knorr had qualified as administrator upon the estate of
Augustus P. Wetter, and of Conrad P. and Meta A. Wet-
ter, and all the privies in law or in estate, and the repre-

sentatives of the deceased privies had been made parties defendant to the bill; that the said Louis Knorr, as the administrator of the estates of said Conrad P. and Meta A. Wetter, and the said Edward T. Wetter and Louisa A. Gould, had instituted their action of ejectment in Chatham superior court against said Joseph D. Weed and George Cornwell, copartners under the firm name of Weed & Cornwell, the tenants of complainant, for the recovery of said lots 8 and 9, and complainant was made party defendant, and had pleaded to said action of ejectment; that, in preparing to defend said action of ejectment, it was for the first time discovered that a mistake had been made in describing the lots; and that said original deed was prepared in the office of Messrs. Law, Bartow & Lovell, eminent attorneys of Savannah, as complainant was informed and believed, then counsel for said Henry D. Weed, who, having perfect confidence in his said counsel, accepted said deed as correct, and filed the same among his private papers, where it remained until it became necessary to use the same in defence of said ejectment, when for the first time the mistake was discovered.

The bill prayed that the mistake in the original deed to Henry D. Weed, and also in the deed from Joseph D. and John W. Weed, to complainant, might be corrected, and that the action of ejectment, in the meantime, be stayed.

On June 30, 1885, a general demurrer to said bill was filed on the grounds:

First. That complainant's remedy at law was full, adequate and complete.

Second. That there was no equity in said bill.

The demurrer was overruled. These defendants afterwards, at the same term, filed a plea with a copy of the will of Mrs. Telfair attached, setting up, in substance, the same objections which were relied upon under the demurrer. This plea also was overruled. To the decisions on the demurrer and plea, said defendants filed their bill of exceptions *pendente lite.* During the same term the

defendants, Joseph D. Weed and John W. Weed, filed their answer, admitting the allegations in said bill. On the first day of the March term, 1886, the said Wetter defendants filed their answer to the effect that they did not know, except as informed by said bill, whether or not the alleged deed was made, and whether or not the intention was to convey any other lot except as specified in said deed. Said answer admitted that the said Alberta C. T. Wetter died intestate in July, 1866, leaving in life her said husband and four minor children, Edward T., Conrad P., Meta A. and Louisa A. Wetter, then Gould; that the said Conrad died intestate in 1874; that the said Meta died intestate in 1878, and the said Augustus P. Wetter died intestate in 1882; and that Louis Knorr qualified as administrator of the estate of Augustus P. Wetter in December, 1883, and qualified as administrator of the estates of Conrad P. and Meta A. Wetter in January, 1884. Said answer further admits that said four children were and are privies in law of their said father and mother in the sense that an heir is the privy in law of his deceased ancestor, but denies that they are privy with said Augustus P. Wetter, as executor and trustee of the will of Margaret Telfair, or with Alberta C. T. Wetter, as life tenant under said will; it denies that Louis Knorr, as administrator of Augustus P. Wetter, is in privity with him as executor and trustee under the will of Margaret Telfair. Said Wetter children claim said lots, 8 and 9, since the death of their mother, under the will of Margaret Telfair, a copy of said will being attached as an exhibit to said answer.

So much of said will as is necessary to be here inserted is as follows:

"Second. I devise and bequeath to Augustus P. Wetter, the husband of my granddaughter, Sarah Alberta C. T. Wetter, all of my property, both real and personal, which may remain after the payment of my just debts, to hold said property in trust for the sole and separate use of my said granddaughter, Sarah Alberta, free from the debts, liabilities and contracts of her present, or any future husband, during her natural life.

"In further trust to convey the same, during the natural life of th said Sarah Alberta, from time to time, to such persons, in such portions, and on such considerations, as she may in writing request.

"In further trust, upon her decease, to make such disposition of said property as she may, by any writing of a testamentary character, direct.

"In further trust, should she die intestate, to hold said property for the benefit of such persons as may, at the time of her said decease, come under the designation of her next of kin by the statute of distributions at that time in force in the State of Georgia."

Said answer admits that it might be true that the sale of said lot was claimed to be made in accordance with the power vested in the executor and trustee and the life tenant, under the will of Margaret Telfair; but said answer denies the power, and avers that the intention was immaterial.

The answer denies complainant's right to the relief prayed for.

Upon reading the answer, and before any evidence was submitted, said defendants made a motion to dismiss complainant's bill on the ground that Mrs. Telfair's will was a necessary part of complainant's case, and upon the grounds alleged in support of their demurrer and plea. Complainant insisted that said question was *res adjudicata*, and could not be reopened. On March 13th, 1886, the court rendered a written decision to the effect that the views of the court had undergone a change ; that, as the court now thought, the will of Mrs. Telfair was a necessary part of complainant's case ; and that the court was of opinion that the will gave the executor and trustee power only to sell and convey the life estate of Mrs. Wetter, and any decree rendered should protect the rights of the remaindermen. The court further held that the complainant could go to the jury upon the facts, after first requiring that complainant should produce the will of Mrs. Telfair.

The complainant then introduced evidence to support his bill, of which it is unnecessary here to say more than that it sustained the complainant's allegations.

v 77—41

Upon the conclusion of complainant's testimony, defendants moved to dismiss said bill, in the nature of a nonsuit, upon the ground that, under the will of Margaret Telfair, the executor and trustee could sell only Mrs. Wetter's life estate.

Complainant resisted said motion, upon the grounds that said will had not been put in evidence, and was not before the court; that the said will had no relevancy to the relief prayed for by complainant; and that the record showed that the issue raised by said motion had been determined at a previous term, and was *res adjudicata.* Complainant further insisted that he could not be made to introduce said will after he had closed his testimony, as the deed had been introduced and read to the jury unaccompanied by said will, without objection on the part of defendants.

The court thereupon required complainant to introduce said will in order to save a nonsuit; and the will was read to the jury.

On March 15th, 1886, the court submitted certain questions of fact to the jury, and the jury found all the facts in favor of complainant, and that the deed to Henry D. Weed and the deed to complainant did not carry out the real intention of the parties thereto, and that there was a mistake in the description of the property, lot number seven being inserted and described, instead of lot number nine. And thereafter complainant tendered to the court a decree in his favor, based upon the finding of the jury, and requested the court to sign the same; and the court, on April 3d, 1886, rendered a decision in writing, refusing to sign said decree, and stating that any decree rendered must protect the rights of said defendants, which are not to be prejudiced by said decree.

On April 29th, 1886, said defendants filed a motion for a new trial in said case, with a brief of the evidence submitted by complainants, as hereinbefore set forth.

The grounds of said motion for a new trial were:

That the court would not submit to the jury, to be found

by them as a fact, whether or not, at the time of the execution of said deed to Henry D. Weed, he had actual notice that lot No. 9 belonged to Margaret Telfair at the time of her death, and passed under her will to Augustus P. Wetter as trustee.

That the court would not submit to the jury, as question of fact, whether or not said Henry D. Weed had actual notice of the contents of said will and the power of sale therein contained.

Whether or not the deed sought to be reformed referred to the will of Margaret Telfair, and purported to be executed under the powers of that will.

What were the powers of the said will under which said deed was executed.

Because the court refused to charge the jury what would amount to actual notice.

Because the court refused to dismiss complainant's bill on motion, as aforesaid, and submitted questions of fact to the jury.

Because the court erred in overruling the demurrer at the first term.

Because the court overruled defendant's motion to dismiss the bill at the first term.

Because the verdict of the jury was not full, and did not cover all the issues of fact, especially the question of fact whether or not Henry D. Weed had actual notice of the contents of Margaret Telfair's will, and of the power of sale only of her granddaughter's life estate under said will, and whether or not Henry D. Weed was a *bona fide* purchaser, without actual notice of such facts as charged him with knowledge of the limitation of the power of sale conferred by said will upon the persons from whom it is alleged he bought the property.

Because the verdict was contrary to the law and evidence.

On May 1st, 1886, a new trial was granted by the court upon the ground alone that the court erred in refusing to dismiss the bill as to said defendants.

This grant of a new trial is the error assigned.

The new trial was granted by Judge Adams, as above stated, solely because, in his opinion, he erred in refusing to dismiss the complainant's bill as to the Wetter defendants. Their motion to dismiss was made on the ground that the bill was without equity as to them. They insisted that there was no equity in it for the reason that, by the terms of Mrs. Telfair's will, Mr. Wetter and Mrs. Wetter had no power to convey any estate reaching beyond the life of the latter, and that therefore their attempt to do so in the deed to Henry D. Weed must be treated as a nullity,—admitting that they intended to describe therein the lot now claimed by complainant. This being true, it would follow, of course, that neither he nor his heirs could have, by virtue of such deed, any right whatever in the property. If they could have no right in the land, a reformation of the deed, which is the evidence of such supposed right, could not be had at their instance, in the manner proposed as against these defendants. The judge came finally to adopt the construction of Mrs. Telfair's will thus urged in the demurrer. While quite a number of other matters were argued before us, we regard the question raised at this point as controlling, and shall deal exclusively with it.

What authority, then, did Mr. Wetter have as to the conveyance of the property described in Mrs. Telfair's will? In endeavoring to answer this question, we shall accept as a sufficient guide the cardinal and familiar doctrine that, in the interpretation of wills, the intention of the testator shall be diligently sought for, and effect given to the same, so far as may be consistent with the rules of law. Code, §2456; 8 *Ga.* 34; 15 *Id.* 123; 34 *Id.* 401; 38 *Id.* 566. In such a search, precedents can avail us but little. As was said by this court in *Olmstead vs. Dunn,* "each will must be construed for itself, and, in a large part, depends upon its own terms and the peculiar circumstances surrounding the testator." **72** *Ga.* 850.

The first clause of the second item above quoted conveys to Augustus P. Wetter all the property which the testatrix should leave after the payment of her just debts. Such property should be held by him, however, " in trust for the sole and separate use" of his wife "during her natural life." The expression, "during her natural life," in this connection would obviously be without meaning except as intending to invest Mrs. Wetter with a life estate. This estate being conferred on Mrs. Wetter, and he being made the trustee thereof, the will proceeds, in the next sentence, to communicate to such trustee additional authorty over the property. The language is, "in further trust to convey the same during the natural life of the said Sarah Alberta, from time to time, to such persons, in such portions and on such considerations as she may, in writing, request." No question is made but that these words give the trustee power to sell the estate to any number of different persons, to sell it at different times, to sell it in different quantities and on different considerations, provided Mrs. Wetter, in writing, requests him to do so. The only controversy relates to the estate which he can thus convey. The Wetter defendants maintain that his authority is restricted to the conveyance of an estate for the life of Mrs. Wetter. They say that the words "during the natural life of the said Sarah Alberta," which follow the clause "in further trust to convey the same," produce this effect. The meaning, they argue, is that he shall convey for the period of her natural life. We think this is not the true construction. In our judgment, the purpose of the testatrix was, by the use of the words "during the natural life of the said Sarah Alberta," to fix the time during which the trustee should exercise the powers of sale prescribed. She intended that, as long as her granddaughter lived, the trustee might sell and sell absolutely, provided she so requested in writing. With the granddaughter's death this power of sale in the trustee was to cease. This seems to us to be the natural import of the sentence. Not only

does this construction occur to us from the mere words and their arrangement, but it accords with a rational and intelligent purpose on the part of the testatrix.  Her granddaughter is plainly first in her thoughts and first in her affections.  No other beneficiary is mentioned by name in the will.  She desires to confer upon her a great benefit, and to confer it in such manner as shall most effectually serve her.  She therefore contemplates that it may become expedient to change the form of the property, and has in mind the possible need of its being sold.  How shall a sale be made?  She very reasonably determines that it shall be effected through the trustee.  When shall a sale be made?  It is to be for her granddaughter's benefit, and the testatrix says let it be during her granddaughter's life and when she may in writing request.  How can he sell to the best advantage?  An estate *per auter vie* at best is not a very marketable one, being the lowest species of freehold.  Kent. Com. v. 4, 26.  Black. Com. B. II. 121.  Such an estate in personalty would certainly not be attractive to buyers.  Besides, the sales are to be from "time to time," not merely when the granddaughter is young and an estate for her life would be correspondingly valuable, but when she is old and such an estate would be worth proportionately less.

A sale in fee simple is obviously the most advantageous as to the price to be had, and consequently as to the investment to be substituted.

The power over the property given Mr. and Mrs. Wetter, as we construe the sentence just considered in the will, is in harmony with the other authority with which Mr. Wetter is clothed in the next sentence, which is as follows:  "In further trust, upon her decease to make such disposition of said property as she may, by any writing of a testamentary character, direct."  The expression here, "upon her decease," is in opposition to the expression in the preceding sentence, "during the natural life of the said Sarah Alberta;" and as the latter allowed her as long

as she lived to have the property sold whenever, to whomsoever and on what consideration soever she might by a writing request, so the former empowers her, when she comes to die, to give it by will to whomsoever she would.

It was contended by counsel for the defendants in the argument before this court, that Mrs. Telfair's will was fully considered in the case of *Wetter, trustee, vs. Walker,* (62 *Ga.* 142), and construed as they now claim that it should be. In support of this view, the following language used by Mr. Justice Bleckley is relied upon:

" Even any apparent inconsistency between the power and the express life estate disappears by construing the terms, 'and in further trust to convey the same, during her natural life, from time to time, to such persons, in such proportions and on such conditions, as she may in writing request,' as restricting the duration of the estate, so authorized to be conveyed, to the period of her life; and this, in all probability, is the true intent and meaning of the clause, for it is immediately added, ' in further trust, upon her decease, to make such disposition of *said* property as she may by any writing of a testamentary character direct; in further trust, should she die intestate, to hold said property,' etc. The purpose seems to have been to keep the trust on foot as to the inheritance in the whole of the property; and to do that, any conveyance made during the life of the granddaughter [*i. e.* Mrs. Wetter], at her request, would have to be limited in its operations to the period of her life, or to a more brief duration. See 23 *Ga.* 515. . . We were requested in the argument to construe the will to the extent to which we have gone, and this is all we have attempted."

There are several things to be considered in reference to this citation in determining its value in this connection. One is that it is clearly *obiter dictum*, and consequently not binding as an adjudication. That such is its character will plainly appear from an examination of the questions involved in that case. One Walker sued Augustus P.

Wetter, as trustee for his children, for materials furnished to and work done on certain real estate which was alleged to form part of the trust property. It was admitted by the defendant that the work was done and the materials furnished, as plaintiff averred, and that the prices charged were correct. The defendant denied, however, that the property improved thereby was a trust and urged that it belonged to him as an individual. He said that said property was embraced in Mrs. Telfair's will, that his wife had died intestate some years before the account was made, and that by the terms of such will, on this state of facts, the title thereto passed to him. He claimed to come within the meaning of "her next of kin," used in the item which is before us. It was replied by the plaintiff that Mrs. Wetter's children were "her next of kin," and that under the will he was their trustee of this property.

The remarks quoted from Mr. Justice Bleckley were surely not necessary to the determination of this issue. When the court ruled that Mrs. Wetter's children were "her next of kin," and therefore took the property under the will as beneficiaries of a trust held by Wetter, it disposed of the controversy.

Having thus relieved ourselves of this citation as an authority, we further remark that we cannot accept as satisfactory the reasons stated by this very learned and discriminating judge for the construction which he puts on the will.

The power to sell the fee is inconsistent with a life estate considered in itself. This is not a case, however, where the testatrix merely creates, by appropriate language, a life estate and then stops. Such an estate is created, but the testatrix sees proper to invest the trustee of it with an authority in respect to the property of which it consists beyond what is usually incidental to such an estate. This it was plainly competent for her to do. "A testator, by his will, may make any disposition of his property not inconsistent with the laws or contrary to the

policy of the State." Code, §2399. *Redd vs. Hargroves et al.*, 40 *Ga.* 18.

Again, it is said in the citation under consideration that "the purpose seems to have been to keep the trust on foot as to the inheritance in the whole of the property, and to do that, any conveyance made during the life of the granddaughter, at her request, would have to be limited in its operations to the period of her life, or to a more brief duration." We fail to see in the scheme of the testatrix any such purpose. It was certainly altogether and necessarily inconsistent with such an intention to allow Mrs. Wetter the power, which she unquestionably had, to dispose of the whole property by will, and thus at once end the trust and place the subject of it beyond the reach of the persons contemplated in the third clause of this item of Mrs. Telfair's will.

Our understanding is, that the property was to be held in trust for the persons designated in this clause, in the event that it should remain in the trustee's hand, because the powers conferred in the two preceding clauses had not been exercised.

Entertaining the views expressed in this opinion, we reverse the judgment of the court below and direct that a decree be entered in conformity with the verdict.

Judgment reversed.