### BRITT *v.* RAWLINGS.

A will contained this item: "I give and bequeath to my beloved wife [certain named slaves] and their future increase, to her and her heirs forever. I also loan to my said wife all that portion of my land [describing it]. This land I loan her in lieu of a dower. I also give and bequeath to my said wife, in fee simple, an equal portion of my perishable property with my children, to her and her heirs forever." *Held*, that the testator intended that his wife should have the slaves and other personalty absolutely, and the land only for life. It follows that her heirs have no title to the land, but that the same is in the purchaser at a public sale lawfully and regularly made by the administrator *cum testamento annexo* of the testator, after the death of his wife. (R.)

April 20, 1891.

Wills. Estates. Words and phrases. Before Judge HINES. Washington superior court. September term, 1890.

Reported in the decision.

T. H. POTTER, for plaintiff.

HARRIS & RAWLINGS, A. F. DALEY, EVANS & EVANS and T. B. FELDER, JR., for defendant.

SIMMONS, Justice.

The third item of the will of William Tanner was as follows :

" I give and bequeath to my beloved wife, Louise

Tanner, one negro woman, Elcy, and her five children, Malinda, Jincy, Isaiah, Eady, and Sarah Ella, and their future increase, to her and her heirs forever. I also loan to my said wife all that portion of my land, embracing my homestead, lying between the creek by William Whiddon to the Fenn's bridge road from Sandersville, containing about three hundred acres, more or less. This land I loan her in lieu of a dower. I also give and bequeath to my said wife, in fee simple, an equal portion of my perishable property with my children, to her and her heirs forever."

Upon the trial of this case below, the court held that this item conveyed an absolute fee simple estate in the lands therein described to Mrs. Tanner, the testator's widow, and accordingly directed a verdict for the plaintiff, who was an heir of Mrs. Tanner, and claimed under her by virtue of this will. A new trial was granted, for the reason, no doubt, that the court's construction of the will was wrong. We think the court erred in his ruling at the trial, and did right in recalling the same.

Section 2454 of the code provides that the word "lend," when occurring in a will, will be construed to mean "give," unless the context requires its restricted meaning. We have no difficulty in arriving at the conclusion that in this particular will the context does require that the word "loan" should be held *not* to mean "give." It is a "cardinal and familiar doctrine that, in the interpretation of wills, the intention of the testator shall be diligently sought for, and effect given to the same so far as may be consistent with the rules of law." Code, §2456; *Weed* v. *Knorr,* 77 *Ga.* 644, and cases there cited.

It will be observed that in disposing of the slaves mentioned in the item of the will above quoted, the testator *gave and bequeathed* them to his wife, "*to her and her heirs forever.*" In the same item, he also *gave and bequeathed* to his wife a share of his perishable

property *in fee simple.* It appears, then, that the gifts of the slaves and the share in the perishable property were plainly and unequivocally absolute; but in this same item, in disposing of his land, the testator uses the word "loan," and expressly says that the land is loaned to his wife in lieu of a dower, which he unquestionably knew was only a life-estate. It is difficult to conceive why he should have used these different expressions in relation to the several kinds of property disposed of by this item, unless he intended that his wife should have the slaves and other personalty absolutely, and the land only for life. We are entirely satisfied that this was the intention of the testator, and that such intention is easily and unmistakably to be gathered from the will itself. It follows that the heirs of Mrs. Tanner had no title to the land in dispute, but that the title to the same was in the defendant, who bought the land at a public sale lawfully and regularly made by the administrator *cum testamento annexo* of William Tanner's estate, after Mrs. Tanner's death.

The judgment of the court below is therefore -

*Affirmed.*