ULLMAN *v.* THE BRUNSWICK TITLE GUARANTEE & LOAN CO.

96  625
102  166

96  625
103  110
103  791

96  625
106  515

96  625
111  798

96  625
p116  658

1. There is nothing in the evidence act of 1889, or the amendments thereto, which excludes a director or other agent of a corporation from testifying as a witness in a case to which the corporation is a party, concerning transactions had between such director or agent in behalf of the corporation, and a person since deceased whose executor or administrator is the other party to the case.

2. A widow's claim to a year's support out of the estate of her deceased husband is, as to personal property belonging to such estate, superior to the claim of a creditor for an unpaid balance of purchase-money due by the deceased for such property.

3. Where personal property was pledged as collateral security for the payment of a promissory note, and the pledgor died, the legal title to the property pledged was so far vested in his estate as to render such property liable for the payment of the widow's year's support, as against the claim of the creditor holding the note secured by the pledge.

August 12, 1895.

Petition for injunction. Before Judge SWEAT. Glynn county. February 26, 1895.

Max Ullman died in May, 1893, and his widow qualified as his executrix in February, 1894. On April 1, 1893, he had given to the Brunswick Title Guarantee & Loan Co. a note for $460 principal, due four months after date. The note recites that he has deposited with said company, to secure the payment of this note or any other liability of him to the company due or to become due, twenty shares of fully paid stock in said company, representing that he has full power to pledge such collateral, and constituting the president, vice-president and cashier of said corporation, jointly and severally, at-

v 96-40

torneys to collect or otherwise dispose of the whole or any part of said collateral at public or private sale, and without notice of any intention to sell, in case of non-performance of this contract, applying the proceeds to the payment of this note, including interest, and accounting to him for the surplus, if any, etc. On December 27, 1894, the company served the executrix with written notice that on January 1, 1895, within the legal hours of sale, it would offer for sale before the court-house door 20 shares of stock in said company, pledged to it by M. Ullman for the balance of the purchase money thereon, *i. e.* $460 with interest from August 1, 1893, at eight per cent. per annum, unless before said time the principal and accrued interest were fully paid. On December 31, 1894, the executrix presented her petition praying for injunction to prevent the sale of the stock by the company as proposed. The injunction was denied. Errors are assigned: (1) In permitting Kay and Crovatt, officers of the defendant company, to testify in its behalf, over objection that Max Ullman was dead, the witnesses being participants in the transactions with him in issue and to which their testimony related. (2) In refusing the injunction, such ruling being contrary to sections 2533 and 2571 of the code.

The petition alleges, that Max Ullman left but a small estate appraised at $2,035, this including 40 shares of stock of the defendant company valued at $400, which estate is wholly and entirely insolvent; that on March 20, 1894, petitioner applied for the setting apart of a year's support to herself and her three children, and on the next day the appraisers made return setting apart to her $3,500, to which a *caveat* was filed by the receiver of the First National Bank, upon the hearing of which the court of ordinary rendered judgment setting apart to her $2,500; that the caveator appealed to the superior court, and the appeal is pending and undetermined;

that petitioner is entitled also to dower and homestead out of the estate, though she has not sought to have either set apart; that the 20 shares of stock in the defendant company is of little actual value, although it may have a greater prospective value; that she does not know that Max Ullman had not in his lifetime fully paid for said capital stock, but is advised and believes he did so pay for it, and further believes that he may have borrowed some money and deposited said shares as collateral security to secure the repayment of the money borrowed; that her claim for year's support is a lien on said shares, superior to the claim of the company; that the estate of Ullman has not been divided, but is necessary to be kept together for a considerable time to come, and therefore she is entitled to a similar allowance for support for the year following that for which the first allowance was made; that the attempt of the company to sell the stock is in violation of law, in that twelve months have not expired since the date of her qualification as executrix, etc.

The testimony of Kay and Crovatt was, in brief, that they were officers, directors and stockholders in the defendant company at the time of the transaction with Max Ullman in which his indebtedness to the company was arranged and agreed upon, and were present at the time of the transaction. The agreement was made in December, and the note was made afterwards in pursuance of the agreement. Ullman was an original subscriber to the stock of the company, which was payable in monthly installments; and it was agreed between the directors (Ullman being one of them), that he and others of them, instead of paying the installments monthly, might give their notes for the whole amount of the installments, with their stock certificates attached to the notes, as pawns or collateral security for the balance due on the subscriptions, thus making the stock paid up.

CROVATT & WHITFIELD, for plaintiff.

GOODYEAR, KAY & BRANTLEY, for defendant.

SIMMONS, Chief Justice.

1. The only cases in which persons are incompetent to testify in the courts of this State, as to transactions or communications with deceased persons, are those specified in the act of October 29, 1889, amendatory of section 3854 of the code. Subsection (c) of the act deals with suits instituted or defended by a corporation, and declares that in such cases "the opposite party shall not be admitted to testify in his own behalf to transactions or communications solely with a deceased or insane officer or agent of the corporation and not also with surviving and sane persons, officers or agents of said corporation"; but no provision is made as to cases in which the suit is between a corporation and the representative of a party who has since died, and the testimony sought to be introduced is that of an officer or agent of the corporation as to transactions or communications with such deceased person. That this statute is not to be extended by construction so as to embrace cases not strictly within its letter, is made clear by the act itself, it being declared therein that "there shall be no other exceptions allowed under this paragraph by any court" (*i. e.*, exceptions to the general rule of competency laid down in the section amended) "than those herein set forth." See *Woodson* v. *Jones*, 92 *Ga.* 663, 664.) The court below, therefore, did not err in holding that the witnesses Kay and Crovatt were not incompetent to testify as to transactions with the plaintiff's testator.

2. Under section 2571 of the code, "among the necessary expenses of administration, and to be preferred before all other debts," is the provision for a year's support for the wife and children of the deceased. That this claim takes precedence of a mortgage has been repeatedly held by this court (see *Lathrop* v. *Brown*, 65 *Ga.*

312; *Cully* v. *Bloomingdale*, 68 *Ga.* 756); and we do not think a pledge stands upon any better footing in this respect than a mortgage. The code declares that the pawnee has "a special property for the purposes of the bailment," but that "the general property in the goods remains in the pawner." (§2142.) This is simply declaratory of the common law, under which a pledge is a lien upon property but not a legal title to it. In Jones on Pledges (§§ 7, 8), it is said: "The legal title to property pledged remains in the pledgor . . . It is true Lord Coke has said, that the pledgee has a property in the thing pledged; and again, that he has a property in it, and not a custody only. But he is understood to mean by this, a special property, and not a property in the general sense of the word." "An agreement whereby certain certificates of stock are delivered as collateral security, with a stipulation that if the debt is not paid at maturity the securities shall be under the control of the holder, who is authorized to dispose of them and apply the proceeds to the credit of the maker, is a pledge of the stocks. . . . The title remains in the pledgor, with merely an authority to the pledgee to sell in case of default." Even though there be a formal transfer of title to the stock, the transaction is still a pledge, and as between the parties constitutes merely a lien upon the property. *Id.* §9. Section 2142 of the code, *supra*, it is true, declares that "the death of neither party interferes with their respective interests," but while this preserves to the pledgee his interest in the pledge, it does not place him upon a higher plane than any other lienholder as against the claim for year's support.

It follows, that under the facts alleged in the petition the court erred in not granting the injunction prayed for.        *Judgment reversed.*