MOBLEY, superintendent of banks, *v.* MACON NATIONAL BANK.

No. 8197. FEBRUARY 9, 1932.

*Park & Strozier,* for plaintiff.

*Jones, Jones, Johnston & Russell,* for defendant.

ATKINSON, J. A. B. Mobley as superintendent of banks instituted an action against the Macon National Bank, to recover an assessment based on an alleged stockholder's statutory liability for depositors in the Bank of Bradley, an insolvent institution which ceased to carry on business in 1928. The exception is to a judgment of the Court of Appeals affirming the judgment of the trial court, which sustained an oral motion to dismiss the case on the ground that the petition as amended failed to allege a cause of action. The stock in question was evidenced by a certificate issued by the Bank of Bradley to H. L. Bradley in 1920, for 20 shares that from the date of issue to the filing of the suit had appeared on the books of that bank in the name of H. L. Bradley, but never in the name of the Macon National Bank. Attached to the certificate was a paper signed by Bradley and one attesting official witness, under date of August 28, 1923, which purported to be an empty form of transfer, that did not describe any property or any debt or name any transferee. The certificate with the paper thus attached was, on the date just stated, placed in possession

of the defendant, which has held it until the present time. In 1927 Bradley executed to the defendant two promissory notes. The certificate of stock, and two other notes secured by deeds to realty were placed by Bradley with the defendant as collateral security for his notes to the defendant. There was no formal transfer of the security deeds, and no transfer of the certificate of stock, other than by delivery with the paper attached as above stated. While the several papers were thus held by the defendant as collateral security, Bradley died in a state of insolvency. The estate left by him, other than his equity in the above-mentioned collaterals, was. partially administered and yielded funds that would pay a dividend to general creditors. The collaterals held by defendant were not "realized upon," because the conditions and times were not "propitious." The administratrix "had about completed the administration, . . and was desirous of making a final disposition of the indebtedness of said Bradley to defendant, in order that the administration of said estate could be completed and the administratrix obtain her discharge." In these circumstances the administratrix through her attorney "proposed [orally] to . . defendant" through its attorney "that the collateral held by defendant . . . be valued, and defendant's claim put down for the difference and a dividend be paid . . on such claim after said valuation of the collateral." The proposal was accepted by letter stating that defendant is willing to value the "collaterals . . at $500," and let defendant's "claim be put down for the difference, for the purpose of distribution."

After such acceptance the administratrix, in a petition to the ordinary, reported the status as hereinabove outlined, and the agreement as above stated. In that petition it was stated: "Your petitioner shows that she and said bank have reached an agreement that the value of all collateral held by the bank is $500, and that the bank will only participate in the dividend paid to the creditors for the amount due it in excess of $500, your petitioner as administratrix agreeing to make legal transfers of the two deeds to secure debt, in order that the said bank may, at such time as it sees fit and proper to do so, realize on the collateral held by it in the form of the Green and Hammock notes." The prayer was for authority "to make the foregoing agreement and compromise with said bank, and that she be authorized and di-

rected to execute a valid and legal transfer to the bank," of the security deeds securing the transferred collateral notes in accordance with the agreement. An order was granted approving the agreement and authorizing the transfers to the bank. After such order the administratrix made the transfers of the deeds, and also paid a dividend to the bank on the basis of the balance of the debt remaining over and above $500. Upon such payment a receipt was issued to the administratrix for $276.04, "being the distributive share of the Macon National Bank against the estate of R. L. Bradley, . . and being in full and final settlement of the administration of said estate, and said settlement being in conformity with the settlement authorized by the ordinary of said county." After the order by the ordinary and the conveyance therein mentioned, the collateral notes were sued on to judgment by the Macon National Bank and executions issued. The bank then obtained a deed from the maker of one of the security deeds, and sold the land therein described for a sum less than $500, which was credited on the debt of Bradley to the Macon National Bank. That bank did not dispose of the certificate of stock in the Bank of Bradley, but continued to hold it after the agreement above mentioned, and was holder thereof at the time of the closing of the Bank of Bradley. The administratrix was discharged. The petition, in the suit of the superintendent of banks against the Macon National Bank, considered with the exhibits attached as part thereof, alleged substantially all that is stated above.

■ One contention by the plaintiff is that the agreement between the administratrix of the estate of R. L. Bradley and the Macon National Bank, and performance thereof as substantially set forth in the foregoing statement, constituted the bank absolute owner of the shares of stock in question, and consequently that a statutory liability to depositors in the Bank of Bradley arose against the Macon National Bank in virtue of its absolute ownership of the shares of stock at the time of the failure of the Bank of Bradley. A careful consideration of the facts relied on to show the agreement and its performance reveals that the contention is not well founded. The alleged status of the shares of stock, before the alleged agreement, was only as collateral security for the notes of Bradley held by the bank. This would not amount to absolute ownership by the bank of the shares of stock, but only

to a special property in such shares of stock as would terminate on payment of the debt, the general property remaining in Bradley. *Ullman* v. *Brunswick Title Guarantee &c. Co.*, 96 *Ga.* 625 (2) (24 S. E. 409). The language employed, and the alleged circumstances under which the agreement was made and performed, show a conventional plan, for convenience of both parties, to fix an amount of excess debt over and above the estimated value of the collaterals upon which the administratrix contemplated payment, to general creditors, of a dividend with funds derived from other assets of the estate. They do not show an intention to change the status of the papers as collateral security, or to credit the value of the shares of stock on the debt, or to put an absolute estate therein in the bank as contended. This ruling does not conflict with that based on different facts in Ohio Valley National Bank *v.* Hulitt, 204 U. S. 162 (27 Sup. Ct. 179, 51 L. ed. 423), cited by the plaintiff.

■ Another contention of the superintendent of banks is, that, aside from the agreement already set forth, "a pledgee of bank stock as collateral is liable as a stockholder merely because he is a pledgee," and, upon that basis, that the Macon National Bank is liable to depositors in the Bank of Bradley under the statute. Prior to 1893 there was no general law of this State declaring the individual liability of stockholders in banks. Whether such liability existed depended upon the provisions of the charter in a given case. *Wheatley* v. *Glover,* 125 *Ga.* 710 (3) (54 S. E. 626). The first general law on this subject was the act approved December 20, 1893. Ga. L. 1893, p. 72; Civil Code, § 2270. This law was substantially embodied in article 18, section 1, of the banking act of 1919 (Ga. L. 1919, pp. 135, 189), which declares: "A bank incorporated under this act shall be responsible to its creditors to the extent of its capital and its assets; and each stockholder shall be individually liable for all the debts of said bank to the extent of the balance remaining unpaid on his or her shares of stock; and said stockholders shall be further and additionally individually liable, equally and ratably (and not one for another), to depositors of such bank for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock; it being the true intent and purpose of this section, that, as to depositors for all moneys deposited with said bank, there shall be an individual liability upon each stock-

holder of such bank, over and beyond the par value of his or her original shares of stock, equal in amount to the face value of said shares of stock." This act appears now in Park's Code Supplements 1922 and 1926, § 2279(a).

This statute was under consideration by this court in *Bennett* v. *American Bank & Trust Co.,* 162 *Ga.* 718 (134 S. E. 781). That was a suit instituted by the American Bank and Trust Company against Bennett as superintendent of banks, to enjoin enforcement of an assessment levied in virtue of the shareholder's liability to depositors, as provided in that statute. The assessment was against the bank as pledgee of 36 shares of stock of the Bank of Donalsonville. It was said by this court: "It was a contention of the plaintiff bank that it was merely a pledgee of the stock, and was not a stockholder within the meaning of the general statute creating stockholder's liability. A statute was embodied in section 9 of the special act of 1889 (Acts 1889, pp. 522, 527), creating a charter for the Brunswick State Bank. It was there declared: 'The stockholders . . shall be [liable] to the creditors of such corporation, . . individually . . equally and ratably, and not one for another as sureties, . . for all contracts and debts of said corporation, to the extent of the amount of their stock therein, at the par value thereof, respectively, at the time the debt was created, in addition to the amount invested in such shares.' The above-quoted provision of the statute was involved in *Chatham Bank* v. *Brobston,* 99 *Ga.* 801 (2) (27 S. E. 790), which was a suit to recover the statutory liability of stockholders imposed by the charter of the Brunswick State Bank. It appears from the record of file in this court that several of the defendants whom the books of the bank showed to be stockholders were shown to hold the shares of stock only as collateral security, and that the trial judge held that the defendants were liable as holders of the stock, notwithstanding they held it only as collateral security. On review in this court it was held: 'Where the charter of a bank imposes on all of its stockholders personal liability to its creditors, such liability attaches as well to those who acquire a complete legal title to stock of the bank by having the same transferred to them as collateral security for debts due by the transferrers, as to those who purchase such stock outright.' The statute creating the liability is so similar to the statutory liability clause contained

in the act of 1919, supra, as to render the decision there made controlling in the present case. So, if it be conceded that the plaintiff held the stock only as collateral security, it must be held that it was a stockholder within the meaning of the general statute imposing liability upon stockholders of banks for the benefit of depositors. The foregoing ruling is put upon the construction of the statute imposing a statutory liability, which, according to the ruling in *Chatham Bank* v. *Brobston,* supra, applies to persons shown by the books of the bank to be stockholders, though the stock be owned in a limited sense, such as collateral security for a debt, to the same extent as it may apply to such persons holding absolute title to the stock. In these circumstances the decision in the case of *Ullman* v. *Brunswick Title Guarantee &c. Co., 96 Ga.* 625 (24 S. E. 409), and other similar decisions, drawing distinction between the status of title to negotiable paper held as collateral security and title held absolutely, and applying such distinction to the facts of those cases, have no application to the question now under consideration." The foregoing ruling followed and applied the former decision in *Chatham Bank* v. *Brobston,* based on the fact that the shares of stock appeared on the books of the bank issuing the stock in the name of the pledgee. It was not held in either of these cases, as intimated in the opinion rendered in the instant case by the Court of Appeals, "that a mere pledgee creditor, holding bank stock as collateral security, thereby became the real or legal owner of the stock." The principle in those cases will not be extended to instances of bona fide pledge of shares of stock, where the books of the corporation issuing the stock do not in any way disclose existence of the pledge or the name of the pledgee. In the instant case the shares of stock did not at any time appear on the books of the Bank of Bradley in the name of the Macon National Bank as pledgee or otherwise. In these circumstances the special property of the Macon National Bank in the shares of stock treated merely as a pledge or collateral security for debt, not shown upon the books of the Bank of Bradley, did not constitute the bank such shareholder in the latter institution as would impose upon it a statutory liability. As such pledgee the bank would not be the real owner of the stock, and it would not have misled depositors or creditors to their injury by having its name appear as a stockholder on the books of the

bank. This decision is in harmony with the rulings made in *Clay* v. *Mobley,* 171 *Ga.* 548 (156 S. E. 194); *Harris* v. *Taylor,* 148 *Ga.* 663 (98 S. E. 86); Ohio Valley National Bank *v.* Hulitt, supra.

The rulings hereinbefore announced dispose of the controlling questions in this case. The judgment of the Court of Appeals, on which error is assigned in the petition for certiorari, is

*Affirmed. All the Justices concur.*