37290.  STATE HIGHWAY DEPARTMENT *v.* WILSON *et al.*

Decided October 14, 1958—Rehearing denied November 13, 1958.

*Eugene Cook, Attorney-General, Paul Miller, E. J. Summerour, Assistant Attorneys-General, Ariel V. Conlin, John E. Hogg, Deputy Assistant Attorneys-General, Maxwell A. Hines,* for plaintiff in error.

*Robt. R. Forrester,* contra.

TOWNSEND, Judge. ■ The questions raised by the motion to strike and the motion to dismiss may be disposed of together, for the fundamental question here is whether it is necessary, as a condition precedent to the appeal (rather than at some later date, or not at all) that the amount of the assessors' award must be paid or tendered to the condemnee, and this question necessarily depends upon the consideration of Supreme Court cases, and especially the latest case, *Woodside* v. *City of Atlanta,* 214 *Ga.* 75 (103 S. E. 2d 108). In that case the Supreme Court reversed the judgment of the trial court denying a motion to dismiss the appeal based on the ground that payment or tender of the value of the property sought to be condemned is a condition precedent to the filing of such appeal by the condemnor under a proper construction of article 1, section 3, paragraph 1 of the Constitution of this State (Code, Ann., § 2-301) as follows: "In case of necessity, private ways may be granted upon just compensation being first paid by the applicant. Private property shall not be taken, or damaged, for public purposes,

without just and adequate compensation being first paid." Four of the Justices of the Supreme Court in that case having made that decision, and three of the Justices having dissented, this court is asked to follow older full-bench decisions of the Supreme Court contended by counsel for the plaintiff in error to be in conflict with the majority opinion in that case.

It is well recognized by this court that it as well as the Supreme Court is bound by the oldest unanimous decisions of the Supreme Court on any question decided unless and until that case is overruled, modified, distinguished or declared obiter as authorized by law. Code § 6-1611. And, if there are two conflicting decisions of the Supreme Court, neither of which is unanimous, this court will follow the older case. *Nat. Life &c. Ins. Co.* v. *Fischel*, 62 *Ga. App.* 645(4) (9 S. E. 2d 192). That such is the law is ably pointed out by Mr. Chief Justice Duckworth in a dissent in *Sylvania Electric Products* v. *Electrical Wholesalers*, 198 *Ga.* 870 (33 S. E. 2d 5), which dissent was approved by full bench in the later case of *Rivers* v. *Cole Corp.*, 209 *Ga.* 406 (73 S. E. 2d 196), and in which it was said (at p. 877): "To the extent that the decisions of this court concurred in by all the Justices have defined and specified the essentials of . . . [a rule of law] they are the law, binding alike upon the Court of Appeals and the Supreme Court; and all decisions of the Court of Appeals, together with any later decisions of the Supreme Court that conflict with such older unanimous decisions of the Supreme Court, are unsound, are not the law, and must yield to the older Supreme Court decisions. Consequently, if there are . . . older and controlling decisions of the Supreme Court with which the majority opinion here, as well as the decisions cited therein, are in conflict, then the majority opinion is not the law and is not binding upon anyone, not even the Justices who concurred therein." Since, therefore, the *Woodside* case is not a full-bench decision, and since it is contended that there are other older and controlling authorities which should be followed instead of that case, this court must examine the earlier Supreme Court cases to see whether, in its opinion, they represent the controlling authority on the issue before us, which, briefly, is whether the tender of payment of

the assessors' award is, as against a motion to dismiss an appeal to a jury in a condemnation case, a condition precedent to the appeal.

■ ■ One contention of the plaintiff in error is that the decision in the *Woodside* case is in conflict with the decision in *Hurt* v. *City of Atlanta*, 100 *Ga.* 274, 280 (28 S. E. 65) which, being a full-bench decision, cannot be materially modified by a divided bench in a later decision of the Supreme Court. In the *Woodside* case (at p. 77), the court said of the *Hurt* case: "That case, however, did not involve the city's right to take private property for public use without first paying the owner just and adequate compensation . . . The language from the opinion in this case, as quoted above, is, of course, purely obiter dictum, as to when property is 'taken' within the meaning of our Constitution, which was not involved." Obiter dictum is not binding upon the Court of Appeals as a precedent. *Lacey* v. *State*, 44 *Ga. App.* 791 (163 S. E. 292); *Mobley* v. *Macon Nat. Bank*, 42 *Ga. App.* 267 (155 S. E. 778), affirmed, 174 *Ga.* 256 (162 S. E. 708, 82 A.L.R. 560). A majority decision of the Supreme Court is binding as a precedent on the Court of Appeals until the decision is overruled or modified by the Supreme Court. *Battle* v. *State*, 58 *Ga. App.* 395 (198 S. E. 719). The *Woodside* opinion is the first to declare whether the particular language in the *Hurt* case is obiter, and its decision that it is, although by a divided bench, is binding on this court. The same is true of all the other Supreme Court cases discussed and distinguished in the majority opinion in the *Woodside* case, and accordingly none of such decisions offers this court any valid reason to decline to follow the *Woodside* ruling.

■ But it is also contended that there are at least two older cases not considered or distinguished in the *Woodside* case which require a contrary determination, and which it is the duty of this court to follow, and which would require a contrary determination of the question: *Georgia So. & Fla. R. Co.* v. *Small*, 87 *Ga.* 355 (13 S. E. 515), and *Gate City Terminal Co.* v. *Thrower*, 136 *Ga.* 456 (71 S. E. 903). In the former case the railroad company commenced a statutory proceeding to condemn Small's land; Small commenced an action to enjoin the con-

demnation proceeding and the cases were tried together. Small appealed to the superior court for jury trial from the award of the sheriff's jury, this being the proper ˚procedure under the charter of the railroad by which the condemnation proceeding was begun. The issue on appeal to the Supreme Court was raised by objection to evidence in the superior court trial of the value of the property at the time of that trial, it being contended that value should be set as of the time of the first award. The court in rejecting the contention said (at p. 357): "This question depends upon what time the taking is complete so as to authorize the railroad company to take possession of the land . . . We have carefully scrutinized this record, and there is no indication or intimation therein that any tender of the amount assessed was made by the company to Small. There was consequently no taking by the company for public use, and it was no error on the trial of the appeal to admit evidence of the value of the property at the time of the trial." This case was decided by two judges, but it was approved by a full bench in the *Thrower* case and will accordingly be considered to be as binding on this court as if rendered in the first instance by a full bench.

What was the *Small* case deciding? It clearly states the limits of its own decision as follows: first, an evidentiary question was raised; second, the decision rested upon when *market value* shall be determined in a condemnation case; third, this value element depends upon when there is a taking "so as to authorize the railroad company to take possession of the land." If the "taking" in the *Small* case is the same as the "taking" in the *Woodside* case, then we apprehend a variance between them; otherwise, not.

What, then, was the *Woodside* case deciding? It specifically states that it is reviewing a decision of the trial court refusing to dismiss the condemnor's appeal because the constitutional "first paid" provision has not been complied with; secondly, that to do this it must construe the constitutional provision. Neither the *Small* case nor any other case prior to *Woodside* has directly undertaken to construe Code (Ann.) § 2-301. The *Woodside* case holds the Constitution to mean (a) "that payment of just

and adequate compensation must precede an actual physical taking in toto of the owner's property for a public use" (p. 77), (which is what the *Small* case decided) and *in addition* it holds that the Constitution prohibits "the taking of any substantial right of property which an owner has in his land." P. 80. Thus *Woodside* is a case of first impression in this State on the question of the full meaning of this Constitutional provision. *Woodside* distinguishes, as *Small* did not, between a legal taking and a physical appropriation. A fair construction of the *Woodside* case shows its holding to be that both constitute a "taking" within the meaning of the prepayment requirement of our Constitution. The legal taking, as opposed to the physical appropriation, begins at the very moment a proceeding in rem is filed against the property by the condemnor, and it is not complete until the land is actually physically transferred to the possession of the condemnor, and all the time between, whether days or years, is time during which the "legal taking" is in progress. The Constitution requires that there must be prepayment before there is any taking at all—which *Woodside* says means not only physical appropriation but legal taking as well, as first evidenced by the filing of the condemnation proceedings, or by any act whereby the owner is deprived of some substantial interest in his property. Yet the law does not require an impossible thing; it does not require prepayment until there is some step in this process of legal taking which may act as a point to determine value, for one cannot pay for that which has no value or an entirely unascertained value. That point arrives in the case when the award of the assessors is returned, it being subject, as held in the *Woodside* case (p. 82), under Code § 36-508 to become "a judgment by a tribunal competent in law to fix the rights and liabilities of the parties to the proceedings with reference to the matters and things involved. *Oliver* v. *Union Point & W.P.R. Co.*, 83 *Ga.* 257 (9 S. E. 1086); *Central Ga. Power Co.* v. *Nolan*, 135 *Ga.* 443 (69 S. E. 561); *Thomas* v. *Central of Ga. Ry. Co.*, 169 *Ga.* 269, 271 (149 S. E. 884); *Georgia Power Co.* v. *Fountain*, 207 *Ga.* 361 (61 S. E. 2d 454); *Mc-Greggor* v. *W. L. Florence Construction Co.*, 208 *Ga.* 176 (65 S. E. 2d 809); *Cable* v. *State Highway Board*, 208 *Ga.* 593 (68

S. E. 2d 564)." From that moment on, the condemnor has no further justifiable excuse for refusing to abide the prepayment provision of our Constitution. It may dispute the value set by the assessors; it may appeal to a jury and get a new trial; it may appeal from there to the appellate court and subsequently cause one or more further trials before there is an exhaustion of the remedies of the losing party, but what it may not do is continue with any step involved in the legal "taking" of the property, including appeals authorized by law, without meeting the prepayment requirement, since it can no longer contend that the value is so unascertained as to make it impossible to comply therewith.

The appeal to the jury in the superior court in the *Small* case was by the property owner. In that case there had been no payment or tender by the condemnor at the time of the trial in the superior court. It is there held as follows (p. 357): "This question depends upon what time the taking is complete so as to authorize the railroad company to take possession of the land. Under the clause of the Constitution above quoted, [Code, Ann., § 2-301, supra] the land owner must first be paid, before the railroad company is entitled to take his property and go into possession of it." Since no payment or tender in that case had been made at the time of the trial and since under the Constitution there can be no taking until after payment or tender, the value of the property at the time of the trial was held to be the proper measure of recovery for the property owner. In *Gate City Terminal Co.* v. *Thrower,* 136 *Ga.* 456, supra, the condemnor tendered the amount found by the assessors to be the value of the condemned property and the owner appealed. It was there held in substance that the right to take the property by the condemnor having become complete upon its tender of the amount found to be its value by the assessors, the value of the property at the time of the tender was the proper measure of recovery for the owner. In neither of these cases and in no other case decided by the Supreme Court or this court has the question been made and determined as to just when payment or tender may be required of the condemnor before the proceedings to take may continue, under

a proper construction of the constitutional provision in question. The *Woodside* case, although by divided bench, decides this question for the first time in this State. It is, therefore, not only binding on this court, but in our opinion is a sound construction of the constitutional provision in question designed to guarantee a substantial right to the sovereign citizens of this State in the ownership and enjoyment of their private property.

■ The trial court did not err in dismissing the appeal of the condemnor on the ground that it had not complied with the Constitutional condition precedent to appeal by first paying or tendering the amount of the award.

*Judgment affirmed. Gardner, P. J., Carlisle, Quillian and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, Chief Judge, dissenting. ■ As I understand the ruling of the majority in the *Woodside* case it simply means that where a condemnor has taken or damaged private property without the payment or tender of just compensation within the time for appeal, he can proceed no further with an appeal. There is no law in this State making the payment or tender a prerequisite for a condemnor's appeal. The only constitutional or statutory safeguard is that property shall not be taken or damaged without tender or payment of compensation. I yield to no man in my adherence to the constitutional rights of citizens. At the same time I do not yield my duties under my oath of office in adhering to constitutional and established legal principles in deciding cases according to the Constitution and laws of this State as I conceive them to be regardless of every other consideration. If the Constitution is inadequate, if our statutes are inadequate, there is a remedy for correction under law. I think it important at this point in history for the courts of Georgia to avoid the pitfalls of unwarranted judicial action which we are so zealously opposed to in other jurisdictions.

■ I dissent from the ruling in the first division of the opinion. A majority of the members of the Supreme Court is without power or authority to declare a six-judge ruling obiter, as such action is a material modification of the full-bench decision. Code § 6-1611 provides: "A decision rendered by the Supreme Court prior to the first day of January, 1897, and concurred in

by three Justices, cannot be reversed or materially changed except by the concurrence of at least five Justices. Unanimous decisions rendered after said date by a full bench of six shall not be overruled or materially modified except with the concurrence of six Justices, and then after argument had, in which the decision by permission of the Court, is expressly questioned and reviewed; and after such argument, the Court in its decision shall state distinctly whether it affirms, reverses, or changes such decision." I have been unable to find a case which decides that a mere majority has the power to overturn or materially modify a full-bench six-judge case without the concurrence of six judges. The many cases in which full-bench cases have been modified materially or reversed have been concurred in by a full bench. There may be some recent exceptions not based on any authoritative ruling by a full bench. A ruling by a full bench has the force and effect of a statute *until* reversed or modified according to law. Code § 6-1611. Every litigant, big or little, is entitled to the protection of this provision of law. Even the Supreme Court admits that a majority ruling which does not follow an older full-bench case is not binding on anybody, not even the majority members. Whether a court consciously or unconsciously by a majority vote fails or refuses to follow the older binding case or cases, it deprives the losing party in that case of the equal protection of the law for the reason that litigants in later cases obtain favorable rulings based on the binding law of the older case, as illustrated by the decisions in the *Sylvania Electric Products, Inc.* and the *Rivers* cases cited in the majority opinion. Judges, like other people, are imperfect, and many times make mistakes, which everybody understands, but that very consideration should put us on our guard and cause us to apply our patience, study and all the wisdom we can muster to the impartial and dispassionate consideration of every question that comes before us. Majorities can be wrong, and often are, but when we see that injustice has been done we can set the law right at least as to future cases as the majority so graciously did in the *Rivers* case. The ruling of the majority in the *Woodside* case is not binding on us or them because the *Hurt* case has not been re-

versed or modified according to law and the principle announced in the *Sylvania Electric Products, Inc.,* case dissent and the ruling adopting this dissent in the *Rivers* case governs us in this case. Moreover, in my opinion the record in the *Hurt* case shows that the ruling as to taking was not obiter. The very fact of the difference of opinion as to whether a case is obiter is sufficient to show the materiality of modifying the old opinion by declaring it or part of it obiter. When a full bench of judges rules on a question the presumption is that they do not regard it as obiter. They know that they should not rule on a question not made by the record. Judges are not required to preface every ruling with a decision that what they are about to rule on is not obiter. To declare a ruling obiter is in my judgment a material modification under the cited Code section, and if the *Hurt* case is in the way of the *Woodside* decision it is still in my way because it has not been legally disposed of and still has the force and effect of an unchanged statute. Some of the full-bench cases reversing or modifying older cases are *Weed* v. *Knorr,* 77 *Ga.* 636 (1 S. E. 167); *Sanford* v. *Sanford,* 58 *Ga.* 259; *Broach* v. *Smith,* 75 *Ga.* 159; *Thornton* v. *Lane,* 11 *Ga.* 459, 501; *Woolfolk* v. *State of Georgia,* 81 *Ga.* 551 (8 S. E. 724); *Sturtevant* v. *Robinson,* 138 *Ga.* 734 (75 S. E. 1121).

The court in *Weaver* v. *Carter,* 101 *Ga.* 206 (28 S. E. 869) clearly stated that it requires a full bench to materially modify an older case to make the modfication binding and many examples are cited as physical precedents.

■ I dissent from the rulings in divisions two and three of the majority opinion. I again call on the ruling in the *Rivers* case. There are several older cases by full benches which clearly expressly hold or necessarily by implication authoritatively hold that where land has not been actually taken or damaged and there has been no payment or tender of compensation there has been no taking. The principal case is *Gate City Terminal Co.* v. *Thrower,* 136 *Ga.* 456 (71 S. E. 903), which specifically approved the ruling by two judges in *Georgia So. & Fla. R. Co.* v. *Small,* 87 *Ga.* 355 (13 S. E. 515). The effort by the majority in this case to distinguish these cases is beyond

my poor powers of comprehension. The *Woodside* case is based solely on the fact that the condemnation proceedings and the fixing of the amount of damage by the assessors was a taking under the law. The only question involved in the cases next above mentioned was the measure of damages. In those cases the determination of the measure of damages depended on the question whether there had been a taking by tender or payment or otherwise. If there had been a payment or tender there was a taking and the measure of damages was the amount of compensation due at that time plus interest. If there had been no taking the measure was the amount of compensation due at the time of the trial. The fact that the condemnee appealed cuts no figure in the slightest. The court ruled that since there was no payment or tender there had been no taking and it is obvious that the court necessarily also adjudged that there had been no actual taking in any way whatsoever. Those cases are clear-cut rulings that assessors' awards and appeals by condemnors do not constitute a taking. How much clearer could an authoritative ruling be and how much further could it be removed from obiter? To say that these cases are not in point and not binding is the same as to say that a ruling on the law of title to land is not binding because the rule is stated in a decision in a damage action for cutting timber rather than in an ejectment or injunction case. Conceding for the sake of argument only that I am wrong about my contention that a majority cannot declare a full bench of six obiter (and I make this concession without the slightest recession from my position), I am quite sure that the majority has not complied with the law in disposing of these two above cited cases and others which I shall cite which I think are necessarily in the way of my following the *Woodside* decision. Code § 6-1611 makes no provision for reversing or modifying an older case by not even mentioning it. The *Rivers* decision again confronts us. The Code section confronts us. I follow them with the little capacity I have. I think I am bound by the oldest cases in point, mentioned above and hereinafter, until the Supreme Court gets them out of my way in a manner prescribed by law. There are other such cases which clearly indicate that the payment or tender

is not prerequisite to an appeal but only to actual physical taking and exercise of dominion. They are *Oliver* v. *Union Point & W.P.R. Co.*, 83 *Ga.* 257 (9 S. E. 1086) in which the court stated that the statute restricted the tender to no particular time; *Chambers* v. *Cincinnati & Georgia R.*, 69 *Ga.* 320, wherein it was held that payment was prerequisite to actual taking; *Central Georgia Power Co.* v. *Stone*, 142 *Ga.* 662 (83 S. E. 524), in which the condemnor paid the amount of the award a year after the appeal was filed; *Georgia Ry. & Power Co.* v. *Mooney*, 147 *Ga.* 212 (93 S. E. 206), where a dismissal by the condemnor of the entire condemnation proceeding was permitted. Certainly no court would permit the dismissal of an entire condemnation proceeding after the condemnor had taken or damaged the property in terms of law. Such a result would be the zenith of unconstitutionality.

Neither the Constitution nor a statute requires that payment is prerequisite to the appeal of a condemnation case. If it is remotely possible that a condemnor should ever be insolvent and thereby cause loss to a condemnee the law can very easily be amended to require a bond. No one has suggested, assuming the solvency of the condemnor, how a condemnee can in any way suffer because he is unable under any rule of law to show his full damages because of the taking or damaging of his property, either or both. If the law in such respect is lacking it should be corrected immediately by legislative action. This decision is not the remedy.