## VALDOSTA, MOULTRIE AND WESTERN RAILROAD COMPANY *v.* VALDOSTA BANK AND TRUST COMPANY *et al.*
## GIDDENS *et al. v.* VALDOSTA BANK AND TRUST CO. *et al.*

1. Where a trust deed was executed, creating a lien upon the property of the corporation executing the same, to secure the payment of certain bonds issued by the corporation, such a lien could be enforced by the trustee against the debtor corporation, in favor of one who loaned it money, took a note therefor, and received the bonds as collateral security, to the extent of the amount actually loaned to the debtor, with interest thereon at the legal rate, notwithstanding the debt was infected with usury.

2. Inasmuch as the verdict of the jury was only for the amount of the money actually loaned by the creditor and interest thereon at the legal rate, a new trial will not be granted at the instance of the defendants because, at a time subsequent to the deposit of the bonds with the creditor as collateral, he became the purchaser of the bonds under circumstances which rendered void the transaction culminating in a sale of the bonds to him. If the sale was void, the holder of the bonds claiming to be purchaser was relegated to his position of holder of the bonds as collateral security, and as such was the proper beneficiary in the proceedings to foreclose the trust deed to secure the payment of the bonds.

FEBRUARY 26, 1916.

Equitable petition—interventions. Before Judge Thomas. Lowndes superior court. September 12, 1914.

The Valdosta Bank and Trust Company filed its petition, alleging, that the Valdosta, Moultrie and Western Railroad Company issued 300 gold coupon bonds, each for the sum of $1,000.00, to secure the payment of which the said railroad company executed and delivered to petitioner a first mortgage or deed of trust, conveying to petitioner, as trustee, its line of railroad, equipment, franchises, and all its property, in fact, both real and personal, by the terms of which deed of trust petitioner could, upon the happening of certain contingencies, foreclose the same for the benefit of the holders of the bonds, the contingencies being that if there

was a failure in the payment of the semi-annual interest due on the then issued and outstanding bonds, and such default in payment should continue for a period of ninety days, the principal of all of said bonds should immediately become due and payable; that the railroad company had defaulted in the payment of seven interest coupons on each of the 300 bonds issued and outstanding; that the property of the railroad company was deteriorating in value; that the company was not earning enough to pay taxes and the necessary expenses and fixed charges; that it owed other large debts to unsecured creditors, who were threatening to bring suit; and that its property was in great danger of being seized in separate parcels under judgments and sold, and thus dismembered. The prayers of the petition were, for a foreclosure of the trust deed for the benefit of holders of the bonds; for the appointment of a receiver to take charge of the mortgaged premises, and that such receiver be directed to manage and operate the railroad pending the sale and disposition of the same; that the railroad company and its agents and officers be restrained from selling, disposing of, or otherwise interfering with the mortgaged premises, and from interfering with the receiver in his conduct of the same; that certain named creditors be restrained from instituting or prosecuting any suit against the railroad company, but that they be allowed and required to intervene in the present proceeding and set up therein their respective claims; and that all other creditors be allowed and required to do the same.

The railroad company filed its answer and an amendment thereto, denying the right of the petitioner to foreclose the deed of trust. The amended answer of the defendant urged several grounds of objection to the foreclosure of the lien under that deed, it being charged that the foreclosure was in favor of B. P. Jones, the holder of the entire bond issue. These grounds were, in brief, as follows:

(1) That Jones had never acquired legal title to the 300 bonds secured by the trust deed, because the alleged sale of said bonds to him was illegal and not authorized by the board of directors. (2) That the title of Jones to the bonds was void, because the debt to secure which they were delivered to him was tainted with usury, containing a $5,000 bonus in addition to the lawful rate of interest. (3) That the security deed could not be enforced in

favor of Jones as owner of the said bonds, because the debt which he claimed against the railroad company, and alleged to be secured by the deed, was tainted with usury, and therefore the title to the assets of the railroad as vested in the trustee by the deed of trust was void in so far as Jones was a beneficiary thereof. (4) That the title of Jones, as a director of the railroad, to the bonds was void, because, while a director of the corporation, and while it was insolvent, and while it was indebted in a large amount to other persons, Jones, knowing these facts, had acquired the bonds to the hurt and injury of said creditors, it being unlawful for a director of an insolvent corporation to secure himself out of the assets of the corporation. (5) That the stockholders and directors of the railroad company in 1911 directed its president to call in and cancel these identical bonds, and that therefore Jones, being a director and stockholder in the corporation, and as such knowing this, in violation of his trust duties as director acquired title to the bonds after the passage of the said resolution. (6) That the title of Jones to the bonds was void, because, while a director of the corporation, he purchased the bonds at a price below their par value. (7) That Jones, as director of an insolvent corporation, had acted in bad faith in the purchase of said bonds under the circumstances above set forth.

W. P. Giddens and others, alleging themselves to be creditors of the railroad company, intervened by leave of the court, and were made parties defendant; and they filed an answer setting up practically the same grounds of objection to the foreclosure of the lien under the deed of trust.

At the interlocutory hearing the court appointed certain named persons as receivers to take charge of the entire property of the railroad company; and direction was given to them, in the court's order, with regard to the conduct and management of the railroad. The creditors named in the petition, against whom a restraining order was prayed, were enjoined from interfering with the assets of the property or with the conduct and management of the same by the receivers, and the officers and agents of the railroad company were likewise restrained. In due course the case came on for trial upon the issues made by the petition and the answers of the defendant and intervenors. The jury returned a verdict in favor of the plaintiff. The railroad company and the intervenors

made separate motions for a new trial; which motions having been overruled, the movants brought the case by bill of exceptions to this court for review.

*Branch & Snow* and *Whitaker & Dukes,* for plaintiffs in error.

*Woodward & Smith, E. K. Wilcox, Denmark & Griffin, W. A. Dodson, J. D. McKenzie, James Humphreys,* and *A. J. Little,* contra.

BECK, J. (After stating the foregoing facts.) While the motion for a new trial in this case contains several grounds, it presents in fact two theories upon which the right of the petitioner to foreclose the lien created by the deed of trust for the benefit of the holder of the bonds, B. P. Jones, was contested. Broadly stated, these two theories, either one of which, according to the contentions of the railroad company and of the creditors who by intervention became parties defendant, would result in the defeat of the plaintiff's suit, are based, first, upon the proposition, that, in so far as it is asserted that Jones became the owner by purchase, in November, 1912, of the bonds, this contention of the plaintiff must fall, because the transfer of the bonds to Jones as purchaser and absolute owner was void for the several reasons set forth consecutively in the statement of facts; and, in the second place, that Jones could not avail himself of his status as holder of the bonds as collateral securities or pledges, because they passed into his hands in the character of collateral securities as a part of a usurious transaction, and therefore his title to them as pledgee is void.

The court refused several written requests, duly tendered by the defendants, to instruct the jury that if the claim of Jones against the railroad company, which was secured by the trust deed, was tainted with usury and the bonds were deposited with him as collateral to secure the payment of the note given for the debt, the title of Jones to the bonds would be void, and the trustee could not maintain his action to set up and establish a lien on the assets of the corporation to satisfy the claim of Jones. The court, however, did instruct the jury that if they should find that the transfer of the bonds to Jones, as purchaser and owner under the purchase, was void for any of the several reasons advanced by the defendants, then Jones would be left in the original position occupied by him after having received the bonds as collateral securities

or pledges for the payment of his claim against the railroad company, evidenced by the note above referred to for the sum of $185,280, and that the plaintiff would be entitled to a verdict authorizing it to foreclose the lien created by the deed of trust, for the benefit of Jones, for such an amount of money as he actually loaned to the defendant corporation upon the faith of the bonds pledged or deposited as security, together with interest at the legal rate and exclusive of all usury. The verdict was as follows: "We, the jury, find for the plaintiff $251,860.00 principal, and $59,-865.54 interest, and the mortgage be foreclosed as prayed." In addition to the note for $185,280, referred to above, Jones was the transferee of a note for some $80,000, and the payment of this was also secured by the deposit of the bonds with him as a pledge or collateral security. A comparison of the amount for which the jury returned a verdict in favor of the plaintiff shows that they excluded all of the claims of Jones, the beneficiary under the trust deed, except the amount of money actually advanced by him, with lawful interest. And therefore we are confronted with the question, whether Jones had such right or title to the bonds as would afford a legal basis for the foreclosure of the lien of the trust deed in his favor.

We are of the opinion that the court below found the proper solution of this question. Section 3442 of the Civil Code declares: "All titles to property, made as a part of an usurious contract, or to evade the laws against usury, are void." In the case of *Hodge* v. *Brown*, 81 *Ga.* 276 (7 S. E. 282), which is followed in subsequent cases, the doctrine is laid down, that, so far as a debt secured by a mortgage is sound, the mortgage is sound; that when the whole contract for payment is void, the mortgage given to secure payment is also void; but when the contract for payment is void only in part, the mortgage is void to the same extent only; and that, under the code section which we have quoted, it is securities which when pure afford security by passing title that are, when contaminated by usury, void and of no effect. And we must now inquire as to whether or not when negotiable securities, such as those in the present case, are deposited with one for the security of a note held by him, and the note is infected with usury, he takes title to such paper in the sense in which the term "title" is used in section 3442 quoted above. Sections 3528-3532 read as follows:

"§ 3528.   A pledge, or pawn, is property deposited with another as security for the payment of a debt.   Delivery of the property is essential to this bailment, but promissory notes and evidences of debt, warehouse receipts, elevator receipts, bills of lading, or other commercial paper symbolic of property may be delivered in pledge.   The delivery of title-deeds creates no pledge.

"§ 3529.   The receiver in pledge or pawn of promissory notes is such a bona fide holder as will protect him, under the same circumstances as a purchaser, from the equities between the parties, but not from the true owner, if fraudulently transferred, though without notice to him.

"§ 3530.   The pawnee may sell the property received in pledge after the debt becomes due and remains unpaid; but he must always give notice for thirty days to the pawner of his intention to sell, and the sale must be in public, fairly conducted, and to the highest bidder, unless otherwise provided by contract.

"§ 3531.   The pawnee may use the goods pawned, provided the use does not impair their real value.   He has a lien on them for the money advanced, though not for other debts due to him.   He may retain possession until his lien is satisfied, and has a right of action against any one interfering therewith.

"§ 3532.   The general property in the goods remains in the pawner, but the pawnee has a special property for the purposes of the bailment.   The death of neither party interferes with their respective interests."

Section 3442, as well as the other sections quoted, all appear in our first code and in every subsequent code.   The word "title," as used in section 3442, has the meaning of general title, signifying the interest of one predicated upon general ownership; whereas, as shown by the other code sections referred to, the pledgee of property, whether it be negotiable instruments, choses in action, or other personal property, has only a special property in the thing pledged.   Civil Code, § 3532.   While the pledgee has title, clearly it is only title sub modo.   His right in the thing may be asserted in various ways and under varying circumstances.   For instance, based upon the special property in the thing pledged, the pledgee may maintain trover to recover it against one who is wrongfully in possession thereof and refuses to surrender upon demand; he may even maintain trover against the pledgor, who has the gen-

eral property in the thing, where the latter has received possession of the goods, giving a receipt therefor, in which he promises either to return the property or pay the debt by a certain time. In the case last supposed, failure of the pledgor to keep his promise renders him liable to be sued in trover. In another section of the Civil Code (§ 4289) it is declared that "The holder of a note as collateral security for a debt stands upon the same footing as the purchaser." But that declaration means that he has the same right to the possession of the collateral as a purchaser— the same right to enforce it; but the right to enforce it is only to the extent of the amount of the debt of the holder of the collateral against the pledgor, where the maker has a valid defense against the original payee. So, while a holder of collateral security in a qualified sense has title to the same, actually the right which he has in the property thus deposited or given into his possession is more nearly analogous to a lien than it is to title in its general sense; that is, the sense in which it is used in section 3442 of the Civil Code. In the case of *Partridge* v. *Williams,* 72 *Ga.* 807, it was held that where a promissory note is deposited as collateral security for the payment of a debt infected with usury, the right of the owner of the debt, with whom the paper is thus deposited, to collect the collateral, to the extent of the principal and legal interest of the original debt, is not affected by the existence of usury in the original debt. The writer of the opinion last referred to had before him the provisions of section 3442 at the time of writing the decision, for it is there quoted in full. In the case of *Ullman* v. *Brunswick Title Guarantee & Loan Co.,* 96 *Ga.* 625 (24 S. E. 409), it is said: "Where personal property was pledged as collateral security for the payment of a promissory note, and the pledgor died, the legal title to the property pledged was so far vested in his estate as to render such property liable for the payment of the widow's year's support, as against the claim of the creditor holding the note secured by the pledge." Here again it is distinctly recognized that the pledgee of property as collateral security has only a special property in the thing pledged, or title sub modo. For in the opinion in that case it was said: "The code declares that the pawnee has a 'special property for the purposes of the bailment,' but that 'the general property in the goods remains in the pawner' (§ 2142). This is simply declaratory of

the common law, under which a pledge is a lien upon property but not a legal title to it.   In Jones on Pledges, §§ 7, 8, it is said: 'The legal title to property pledged remains in the pledgor. . . It is true Lord Coke has said, that the pledgee has a property in the thing pledged; and again, that he has a property in it, and not a custody only.   But he is understood to mean by this, a special property, and not a property in the general sense of the word.'   'An agreement whereby certain certificates of stock are delivered as collateral security, with a stipulation that if the debt is not paid at maturity the securities shall be under the control of the holder, who is authorized to dispose of them and apply the proceeds to the credit of the maker, is a pledge of the stocks. . . The title remains in the pledgor, with merely an authority to the pledgee to sell in case of default.'   Even though there be a formal transfer of title to the stock, the transaction is still a pledge, and as between the parties constitutes merely a lien upon the property."   In Jones on Collateral Securities, 112, § 93a, it is said:  "That the debt secured is usurious does not prevent the pledgee from being a bona fide holder of negotiable paper as collateral security.   He is entitled to protection to the extent of the sum lawfully due on the debt secured, unless the statute makes the usurious debt wholly void, when of course the pledge would be void."   See also 31 Cyc. 789 et seq.; 39 Cyc. 995.

We are satisfied, from our examination of the authorities referred to above and those from which we have taken the quotations made in this opinion, that the fact that the debt which Jones, the beneficiary of the proceedings in this case, held against the railroad company, was infected with usury, could not prevent the enforcement of the provisions of the trust deed for the benefit of the holder of the bonds to the extent of the original debt with interest at the legal rate.   There is no question that the bonds had been placed with Jones about two years before the date of the alleged sale to him, which the defendants insist was void, and which the jury, it seems, found to be void under the evidence and the court's instructions.   The finding of the jury being only in favor of the enforcement of the trust deed to the amount of Jones's claim with legal interest thereon, the court's instructions upon the question of the sale of the bonds to Jones, and the requests to charge made upon that subject by the defendants, which were re-

fused by the court, need not be considered; for Jones takes nothing under the purchase; he would have received more had his claim as a purchaser and owner of the bonds been established. But it having been determined that he was not the purchaser and owner and had no enforceable right in that character, he is relegated to his right as the holder of the bonds as collateral security; and this right was not destroyed by the fact that there was usury in his debt.

While the original petition in this case proceeds upon the theory that the lien is foreclosed for the benefit of one who was the absolute owner of the bonds and who had title to them by purchase, under the pleadings of the defendants setting up objections to the foreclosure and denying title in Jones, and under the evidence showing the exact relation of Jones to the bonds, there was no reason why the suit should not be maintained and proceed for the foreclosure of the lien created by the trust deed in favor of the holder of the bonds as collateral security.

*Judgment affirmed. All the Justices concur.*