## VALDOSTA BANK & TRUST COMPANY *v.* DAVIS.

The facts set forth in the plaintiff's petition showed that he was not entitled to the relief sought; and the defendant having demurred upon that ground, the petition should have been dismissed.

No. 3837.   March 1, 1924.

Equitable petition. Before Judge W. E. Thomas. Lowndes superior court. June 2, 1923.

A. L. Davis, the defendant in error, brought his petition seeking to cancel a judgment and execution, and for an injunction against the plaintiff in error, Valdosta Bank & Trust Company, enjoining it from prosecuting a garnishment proceeding pending in the city court of Valdosta. It was alleged, in substance, that the Valdosta, Moultrie & Western Railroad Company, chartered under the laws of Georgia, with a capital stock of $100,000, on the first day of July, 1909, made and executed three hundred gold coupon bonds, numbered consecutively from one to three hundred, each for the sum of $1,000, and to secure the payment of these bonds made, executed, and delivered a trust deed whereby it conveyed to the plaintiff in error, as trustee, its assigns and successors forever, all of its property of every nature whatsoever. The railroad company was unable to sell these bonds, and, being in need of money, borrowed from the plaintiff in error $75,000, for which it gave its note and pledged one hundred of said bonds as collateral to secure the payment thereof. This note was indorsed by Frank Roberts and the defendant in error. Subsequently this note was from time to time renewed. On November 1, 1910, the railroad company borrowed from B. P. Jones $166,860, for which it gave its note and pledged as security for the payment thereof the other $200,000 worth of said bonds. On January 30, 1912, the note given to the plaintiff in error for $75,000 was renewed for the sum of $83,812.15, due April 30, 1912. This note was also indorsed by Frank Roberts and the defendant in error as accommodation indorsers, and their true status to said note was that of sureties. This note recited that the railroad company had deposited with the plaintiff in error one hundred of said bonds, with authority to sell the same or any collaterals substituted therefor; and on November 4, 1912, the plaintiff in error made a pretended sale of said bonds to B. P. Jones, who was at that time its president, at and for the sum of $85,000, which amount was entered as a credit on said note, leaving a purported balance of $2,314.64 due thereon. About the same time Frank Roberts, who was president of the railroad company, made a sale of the remaining two hundred bonds to B. P. Jones, at and for the sum of $170,000, which sale was afterwards contested on the ground that it was not authorized by the board of directors or

the stockholders of the railroad company. Later, on November 27, 1912, after the right to sell these bonds had been questioned by the board of directors and stockholders of the railroad company, the board of directors made another contract with B. P. Jones, whereby the railroad company sold to him the entire issue of bonds at and for the sum of $255,000. Jones at that time was a member of the board of directors of the railroad company, and participated as such in the meeting at which said contract was made. It was provided in the deed of trust to secure the payment of these bonds, that in case default should be made by the railroad company in the payment of any interest on any of the bonds secured by said deed, and such default continued for ninety days, the trustee (plaintiff in error), by making declaration of such maturity in an instrument of writing signed by it, could declare the entire issue of bonds due. Acting under such authority, the plaintiff in error as trustee duly made a declaration of the maturity of the principal of all the bonds secured by said mortgage or deed of trust, as per the terms of the deed. Having so declared the principal and interest of said bonds due, the trustee filed an equitable petition against the railroad company for the foreclosure of the mortgage or deed of trust, in which suit it prayed, among other things, substantially as follows: (a) That the deed be declared a first lien upon all the property, real, personal, and mixed, of the railroad company, for the benefit of the holders of the bonds, for the full amount of principal and interest thereon which was then due or might thereafter become due. (b) That the railroad company, and all persons claiming under it, be forever barred and foreclosed of all equity of redemption in and to all the property and every part and parcel thereof, with appurtenances, immunities, and franchises; and that same be sold under a decree of the court. (c) That after deducting from the proceeds of such sale the costs and expenses of the sale, including attorney's fees, reasonable charges for the services of the trustee, and expenses incurred by it, and taxes or assessments on the premises, the remainder of the proceeds be applied to the principal and interest due and to become due on said bonds. (d) That a receiver be appointed to take charge of the property of the railroad company, with such powers as the court might confer, and to operate it, and that the railroad company be required to surrender the possession of all of its property to said receiver.

To the petition of the trustee the railroad company made its answer wherein it contested the right of the trustee to maintain this proceeding for the benefit of Jones, on the ground that title to the bonds had never been passed into him, because he was a member of its board of directors and by reason thereof occupied toward it the relation of trustee or fiduciary, and therefore in law, equity, and good conscience he was bound to deal and contract with it, if at all, in the utmost good faith and on a basis of like fairness, without undue and unjust benefit or advantage to himself; that, in violation of his trust and the duty imposed upon him as a director, he gained by the purchase of said bonds an undue and unjust advantage to himself as against the stockholders and creditors of the railroad company, since by the purchase thereof he acquired the bonds worth much more than the price paid for them. This issue was also raised by certain of the stockholders of the railroad company. At the trial term (May, 1914) several parties, among them A. L. Davis, filed their intervention in the cause, wherein they likewise attacked the sale of said bonds to B. P. Jones under the contract of November 27, 1912, and alleged that the sale was void, for the same reasons as those set forth in the answer of the railroad company as amended. Upon the trial of the case upon these issues, the jury determined and found that the sale of the bonds under the contract of November 27, 1912, was void, and returned a verdict in favor of the bank as trustee, for $251,860 principal and $59,865.54 interest; finding also that Jones held the bonds, not as owner of them, but as collateral to secure the indebtedness due by the railroad company to him.

While this suit was pending, on August 12, 1913, the bank filed suit in the city court of Valdosta against the railroad company and Frank Roberts and petitioner, in which suit it declared on the note for $83,812.15, dated January 30, 1912, and due April 30, 1912, and alleged that the railroad company as principal and Frank Roberts and petitioner as indorsers were indebted to it on said note in the sum of $2314.64, besides interest from November 4, 1912, at eight per cent. per annum, and ten per cent. attorney's fees. No defense having been filed, the case came on for trial on September 27, 1913, the bank was awarded a judgment against the railroad company, Frank Roberts, and A. L. Davis for the full amount sued for, with interest and attorney's fees. In the present petition it is

insisted that the amount of said judgment is included in the judgment and decree obtained in the equitable proceeding by the bank as trustee against said railroad company on July 30, 1914. On October 4, 1913, an execution was duly issued on the judgment obtained in the city court, and was entered on the general execution docket in the office of the clerk of the superior court. This is the judgment and execution against the enforcement of which injunction is sought in the present case.

On July 30, 1914, a decree was duly entered by the superior court on the verdict in favor of the bank at the May term, in which decree the bank was awarded a judgment against the railroad company for the amount of said verdict, and the mortgage or deed of trust was foreclosed and decreed to be a first lien upon the property and equipment of the railroad company of every nature whatsoever, to the extent only of $251,860 principal, and $59,865.54 interest, with interest on the principal sum from the date of the verdict at the rate of five per cent. per annum; and with costs of suit. Appropriate provision was made in that decree for the sale and disposition of the property and assets of the railroad company for the payment of said judgment, and all other judgments obtained by creditors who had intervened.

On March 25, 1916, B. P. Jones, D. C. Ashley, and A. T. Woodward, were by order of the court, appointed commissioners to sell all of the railroad property, and assets of the railroad company of every nature whatsoever; but on October 14, 1916, Jones, desiring to submit a bid for the property, tendered his resignation as commissioner, which was accepted by the court, and he was discharged by appropriate order. Afterward he submitted to A. T. Woodward and D. C. Ashley, the remaining commissioners, a bid in writing, whereby he offered $350,000 for the railroad, equipment, property, and franchises of the railroad company, exclusive of certain terminal properties therein described, upon the express conditions, that he be not required to pay into court any sum except such as might be necessary to pay the costs of administration, and liens superior to the judgment in favor of the defendant as trustee; and that he be allowed to satisfy said judgment, so far as the balance of the bid would extend, by surrendering to the trustee or to the court the entire issue of bonds which he held.

Two additional commissioners, A. S. Pendleton and A. L. Davis,

having been appointed by the court to act with D. C. Ashley and A. T. Woodward in the sale and disposition of the railroad, property, and assets of the railroad company, said commissioners, on November 11, 1916, filed their report, in which they submitted to the court the offer of B. P. Jones, with the recommendation that they be allowed further time to continue their negotiations for the sale of the property. On December 12, 1916, the commissioners having failed to secure a better bid for the property, the court, upon consideration, granted a further order, by which the commissioners were empowered and directed to negotiate a private sale of the railroad, equipment, property, and franchises of the railroad company, and they were allowed until ten o'clock a. m. on January 20, 1917, to do so, provided they could obtain a bona fide bid for the same, exclusive of the terminal property, in excess of $350,000, the amount offered by Jones. In said order, however, it was stated: "It further appearing to the court that B. P. Jones has submitted to said commissioners, in writing, an offer of $350,000.00 for said railroad, property, equipment, and franchises, . . which offer is submitted upon the express condition that said Jones be not required to pay into court any sum except such as may be necessary to pay the cost of administration and liens superior to the judgment," it was ordered that he be allowed to satisfy the judgment in favor of the Valdosta Bank & Trust Company as trustee, so far as the balance of his offer will extend, by surrendering to the trustee or to the court the entire issue of bonds which he holds. In the same decree it was further provided, after dealing with certain other matters, such as the amount of cash to be paid in to meet certain liens, etc., and other debts, that B. P. Jones "surrender for cancellation the judgment in favor of the Valdosta Bank & Trust Company as trustee, and shall surrender to the court or said commissioners the entire issue of bonds of said road, and the same to be in full satisfaction of the judgment aforesaid, except that whatever liens he may have or any equities in the proceeds of the sale of terminal properties as fixed by the original decree in this case shall not be affected by such cancellation." The bid of Jones was finally accepted by the commissioners, and pursuant to the provision of the order of December 12, 1916, Jones surrendered the entire issue of bonds, and the bank as trustee canceled the judgment against the railroad company in so far as the amount recovered against the rail-

road company was concerned. Davis, the plaintiff in this case, contends that the cancellation of the judgment was an act upon the part of the bank that increased his risk as surety; that the 100 bonds hypothecated to the bank to secure the note of $83,812 were worth more than the amount of the note; and that when Jones, the president of the bank, surrendered said bonds without collecting from the proceeds of the sale a sufficient amount to pay the balance of said note, petitioner was discharged from his contract of suretyship. And inasmuch as the cancellation of the judgment and the surrender of the bonds were acts done by the bank and its president after the judgment and execution to restrain the enforcement of which the present suit is brought, petitioner insists that these were such acts upon the part of the defendant as increased his risk as surety on the note, and relieved him from any further liability on the judgment obtained in the city court of Valdosta.

The defendant bank demurred to the petition on the ground, among others, that the petitioner was not entitled to the relief sought. The court overruled the demurrer, to which ruling exception was taken. The case proceeded to trial, and the jury rendered a verdict in favor of petitioner. A motion for new trial was overruled, and this judgment also was excepted to.

*C. L. Smith,* and *Whitaker & Dukes,* for plaintiff in error.

*E. K. Wilcox* and *Dan R. Bruce,* contra.

BECK, P. J. (After stating the foregoing facts.) This court is of the opinion that the demurrer to the petition should have been sustained, and that it was error to overrule it. In the first place, the cancellation of the decree in the foreclosure suit and the delivery of the bonds which were originally held by the bank as security for the note of the railroad company to the bank, on which petitioner was a surety, was in accordance with the decree of the court rendered in a suit to which Davis himself was a party. The decree to which reference is made here is the one finally disposing of the case after Davis was made a sales commissioner. Moreover, the petitioner himself participated in the final transactions, to which effect was given by decree of the court, under the terms of which Jones was bound to turn over all the bonds and the bank to cancel the decree rendered in the foreclosure suit. And to the provisions of the decree, though Davis was in a position to resist or object to them had they been objectionable, he made no objections and took

no exceptions, but presumably participated in bringing about the results upon which the decree was based; and of course under such circumstances he might be held to have consented to the decree. He cannot complain that he was injured by an act thus done with his consent; and his petition seeking relief against the judgment for the balance due on the note from the railroad company to the bank is without equity, and the demurrer of the defendant to the petition should have been sustained.

Having held that the court erred in overruling the demurrer to the petition, it is unnecessary to pass upon the motion for a new trial, as all that was done after disposing of the demurrer to the petition was nugatory.

*Judgment reversed. All the Justices concur, except*

RUSSELL, C. J., dissenting. I think the court properly overruled the demurrer, and that the case reached its proper conclusion in the lower court. Indeed, it reached the only conclusion possible under the ruling of this court in *Valdosta &c. R. Co.* v. *Valdosta Bank & Trust Co.,* 144 *Ga.* 761 (87 S. E. 1083). There is no estoppel as to Davis by anything that appears in the record; for he had the right to presume that when Jones delivered the bonds in accordance with his bid or offer, the delivery would occur *after* he had obtained title to the bonds, which the decision in the case of the railroad against the Valdosta bank, supra, held he did not have, and expressly held that there would be a surplus. The figures in that case show that the court, while holding that Jones was the mere holder of collateral and not the owner of these bonds, would leave a surplus of nearly $5,000.00, which Jones would have to pay as an individual before he as an individual would be in a position to present the bonds. Although Jones is the president of the Valdosta bank, and the decree foreclosing the mortgage upon which the bonds were issued was properly for the sum total due upon those bonds, nevertheless, *before* Jones as an individual could comply with his bid he would be obliged, under the ruling in the case supra, to have paid to the Valdosta bank the value of the bonds as held by this court; and Davis (this fund being then in the hands of the bank) would, in my opinion, have been entitled in equity to have the balance on his note paid out of the surplus which would thus have accrued. Thus his risk was increased, and as a surety he was discharged.