NEWTON *et al. v.* BENNETT, superintendent of banks.

1. An allegation that a bank, at the time of transfers of its stock by a stockholder, appeared to have been insolvent and in an unsound condition, is a sufficient allegation that the bank was in fact insolvent at such time, in the absence of a special demurrer raising the point that it was not sufficient.

2. The construction of section 3 of article 18 of the act of August 16, 1919 (Ga. Laws 1919, p. 135), and of section 2270 of the Code of 1910, should be neither liberal nor strict, but reasonable.

(a) A stockholder in a bank chartered under the laws of this State, who, with knowledge of the insolvency of the bank, transfers his stock to an irresponsible person, with the intent to avoid the liability of stockholders to depositors in such bank, is not released from such liability by such fraudulent transfer.

(b) Such a transfer is a fraud against both existing and subsequent depositors, and does not exempt a transferring stockholder *from* liability to subsequent depositors.

3. Applying the above principles, the court did not err in overruling the demurrer to the petition.

No. 4393.    December 19, 1924.

Equitable petition. Before Judge Fortson. Walton superior court. May 12, 1924.

*R. L. & H. C. Cox,* for plaintiffs in error.

*Orrin Roberts, J. H. Felker,* and *J. M. Johnson,* contra.

HINES, J. Bennett, as superintendent of banks of the State of Georgia, filed a petition against J. L. Newton and his wife, Mrs. Kate B. Newton, alleging in substance that on March 13, 1924, petitioner took possession of the assets and business of Walton County Bank for the purpose of winding up and liquidating its business; that on February 2, 1922, and May 17, 1922, there were transferred one hundred and thirty-eight shares in the aggregate of the capital stock of said bank from J. L. Newton to Mrs. Kate B. Newton; that at the time petitioner took charge of said bank said shares appeared on the books of the bank in Mrs. Newton's name; that pursuant to law petitioner made against the stockholders of record an assessment amounting to 96 per cent. of the par value of the stock held, in the case of Mrs. Newton $13,248, for the purpose of paying the depositors of said bank; that he issued execution against Mrs. Newton, which remains unpaid; that at the time of the transfers mentioned Newton was the president and a director of said bank, and had an active part in the management and operation of the same, by reason of which he possessed full and intimate knowl-

edge of the affairs and business of the bank, a knowledge superior to that possessed by the ordinary stockholder; that at the time of these transfers said bank appears to have been insolvent and in an unsound condition, which Newton well knew, had good reason to know and suspect, and ought to have known; that at the time of each of said transfers and at the time of filing the petition Mrs. Newton was insolvent and unable to respond on account of her liability as stockholder in the bank; that said transfers were made for the purpose of substituting Mrs. Kate B. Newton in the place of J. L. Newton as a stockholder; that they were voluntary, and constituted a gift by the husband to the wife, and were made with the intent to avoid and escape the individual liability of J. L. Newton as such stockholder; that the transfers were merely colorable and made as the result of a scheme to defraud the depositors as creditors of said bank and to avoid the stockholders' liability imposed for the protection of said depositors; that petitioner is without power, under the rules of law and the statute, to determine the validity of such transfers, and the statute does not afford or point out a remedy by which, under the rules of law, such questions may be raised and determined; that a court of equity will look beyond the form of such transfers, and declare them, by reason of the facts pleaded, to be null and void; that so far as petitioner and the depositors of the bank, in whose behalf the assessment was made, are concerned, J. L. Newton is still a stockholder in said bank, and as such was, on March 13, 1923, liable individually for said assessment; that the remedy at law is incomplete, and a court of equity will afford ample relief. The prayers are, that said transfers be adjudged to be void and without effect; that J. L. Newton be held liable for the assessment against said 138 shares of stock; that petitioner have judgment against him for the amount of the same; and for general relief and process.

The defendants demurred to the petition, upon the following grounds: 1. The allegations are insufficient, and do not show that plaintiff is entitled to the relief sought. 2. The plaintiff's right to assess stockholders arises under the banking laws of the State, and the petition shows that the transfers complained of were made more than six months before plaintiff took charge of the bank; that there is no allegation to show whether or not the transfers were entered on the books of the bank, or notice given as provided by

said banking laws, six months before the affairs of the bank were taken over by plaintiff; that the allegations are insufficient to show that the stock was not subject to the statutory assessments against J. L. Newton, it not appearing that such transfers were completed by proper entries on the bank's books, or by notice to the bank prior to insolvency, or the time when the bank was taken over by petitioner.    3. That the allegations are insufficient to show that J. L. Newton had no right to give his stock in the bank to his wife, it not being charged that said bank was in fact insolvent at the time of the transfers.    4. There is no allegation in the petition showing that the case is proceeding for the purpose of protecting such parties as, at the time of the transfers complained of, the bank was indebted to as depositor, by note or account, so as to be affected by such fraudulent transfers, or upon whom such fraudulent transfers operated; it is not shown what amount of money was due any person, firm, or corporation, who might complain of injury because of such transfers, it being clear that no one who became a depositor or holder of obligation of the bank after the stock was transferred and entered on the books of the bank can complain.    The demurrer was overruled, and it is upon this judgment that error is assigned.

1.    The allegation in the petition, that "at the time of these transfers said bank appears to have been insolvent and in an unsound condition, which the said Newton well knew and had good reason to know and suspect, and ought to have known," is a sufficient allegation that the bank was in fact insolvent at the time of the transfer of the stock by Newton to his wife; and this is especially true in the absence of a special demurrer raising the point that said allegation was not sufficient to show that the bank was insolvent at the time of such transfer.

2.    This case involves the proper interpretation of section 3 of article 18 of the act of August 16, 1919, creating the Department of Banking of this State, which is as follows: "Whenever a stockholder in any bank is individually liable under the charter, and shall transfer his stock, and have such transfer entered upon the books of the bank or give to the bank written notice thereof, he shall be exempt from such liability by such transfer, unless such bank shall fail within six (6) months from the date of the entry of such transfer, or from the delivery of such notice to the bank." Ga. Laws 1919, pp. 135, 190.    Two questions are involved.    One is

whether or not a stockholder, who fraudulently transfers his stock, is discharged from liability by such transfer unless the bank fails within six months from the date of the entry of such transfer or from the delivery of such notice to the bank. The other question is whether or not a stockholder who fraudulently transfers his stock is liable only for debts existing at the date of such transfer. We will deal with these questions in the order stated.

It is insisted that the rule of construction of this statute should be strict, on the ground that it is in derogation of the common law. Statutes imposing individual liability upon stockholders in corporations are held to be in derogation of the common law; but the statutory provision under consideration does not fix liability upon the stockholder, but provides the method by which the stockholder may escape from such liability. So it is in effect remedial, and not merely in derogation of the common law. *Wheatley* v. *Glover,* 125 *Ga.* 710 (54 S. E. 626) ; *Crawford* v. *Swicord,* 147 *Ga.* 548, 550 (94 S. E. 1025). We think that the rule applied by this court in the last-cited case, in dealing with the construction of section 2270 of the Civil Code, should be applied in construing this statute; and that rule is that it "should be construed neither liberally nor strictly, but reasonably." Giving it a reasonable construction, does it discharge from liability a stockholder who makes a colorable and fraudulent transfer of stock with knowledge of the impending insolvency of the bank, and to avoid liability to depositors? We do not think that it was the intent of the legislature to discharge from liability a stockholder who, in bad faith, transfers his stock to escape such liability. This statutory provision deals with bona fide transfers. It does not include male fide transfers. A stockholder, who, with knowledge of the insolvency of the bank, and with the intent to escape liability, transfers to an irresponsible person his shares, remains a stockholder subject to the liability imposed by this statute. Transfers made in good faith and in compliance with the requirements of this statute are valid, and release stockholders from subsequent liability. 7 C. J. 504, § 69; Harper *v.* Carroll, 62 Minn. 152 (64 N. W. 145) ; Persons *v.* Gardner, 113 N. Y. App. Div. 597 (98 N. Y. Supp. 807) ; Foster *v.* Row, 120 Mich. 1, 77 Am. St. R. 565; National Bank *v.* Case, 99 U. S. 628 (25 L. ed. 448) ; Bowden *v.* Johnson, 107 U. S. 251 (2 Sup. Ct. 246, 27 L. ed. 386) ; Pauly *v.* State L. & T. Co., 165 U. S. 606 (17 Sup. Ct. 465) ;

Stuart *v.* Hayden, 169 U. S. 1 (42 L. ed. 639) ; Matteson *v.* Dent, 176 U. S. 521 (20 Sup. Ct. 419, 44 L. ed. 571) ; Earle *v.* Carson, 188 U. S. 42 (23 Sup. Ct. 254, 47 L. ed. 373). In National Bank *v.* Case, supra, the Supreme Court of the United States said: "It is not every transfer that releases a stockholder from his responsibility as such. While it is true that shareholders of the stock of a corporation generally have a right to transfer their shares, and thus disconnect themselves from the corporation and from any responsibility on account of it, it is equally true that there are some limits to this right. A transfer for the mere purpose of avoiding his liability to the company or its creditors is fraudulent and void, and he remains still liable." In Bowden *v.* Johnson, supra, the Supreme Court of the United States said: "As such shareholder he became subject to the individual liability prescribed by the statute. This liability attached to him until, without fraud as against the creditors of the bank, for whose protection the liability was imposed, he should relieve himself from it. He could do so by a bona fide transfer of the stock. But where the transferer, possessed of information showing that there is good ground to apprehend the failure of the bank, colludes and combines, as in this case, with an irresponsible transferee, with the design of substituting the latter in his place, and of thus leaving no one with any ability to respond for the individual liability imposed by the statute, in respect of the shares of stock transferred, the transaction will be decreed to be a fraud on the creditors, and he will be held to the same liability to the creditors as before the transfer. He will be still regarded as a shareholder quoad the creditors, although he may be able to show that there was a full or a partial consideration for the transfer, as between him and the transferee."

In Pauly *v.* State L. & T. Co., supra, the Supreme Court of the United States again affirmed the principle for which we are contending, using the following language: "That if the real owner of the shares transfers them to another person, or causes them to be placed on the books of the association in the name of another person, with the intent simply to evade the responsibility imposed by section 5151 on shareholders of national banking associations, such owner may be treated, for the purposes of that section, as a shareholder, and liable as therein prescribed." In Stuart *v.* Hayden, supra, the Supreme Court of the United States said: "One

who holds shares of national bank stock—the bank being at the time insolvent—can not escape the individual liability imposed by the statute by transferring his stock with intent to avoid that liability, knowing or having reason to believe, at the time of the transfer on the books of the bank, that it is insolvent or about to fail." In Earle v. Carson, supra, Mr. Justice White, who afterwards became Chief Justice, referred to the cases above cited; and the Supreme Court of the United States again affirmed the principle here contended for. In Matteson v. Dent, that court repeated this rule, using this language: "That where a transfer has been fraudulently or collusively made to avoid an obligation to pay assessments, such transfer will be disregarded, and the real owner be held liable."

We do not think it necessary to cite further cases in support of the proposition that if a solvent stockholder transfers his stock in an insolvent bank to an irresponsible transferee, with intent to avoid this statutory liability, under our statute he will be still held to such liability, although the stock so transferred has been entered in the name of the transferee on the books of the bank. This principle is supported by sound reason. Depositors in banks chartered by the laws of this State are entitled to enforce this liability against the stockholders. It is a property right. A stockholder can no more avoid such liability by transferring his stock than he can defeat any other debt by a fraudulent transfer of his property.

But it is insisted that the stockholder so transferring his stock would only be liable to depositors who were such at the date of the transfer of his stock. This is the controlling question in this case, and the one which has made us pause to carefully consider it before reaching a conclusion. We think it necessarily follows, from the proposition that a fraudulent transferer of stock in a bank chartered under our law is still liable to depositors, that such stockholder is liable for all deposits made before and after the transfer. A fraudulent transfer is void as to depositors. As to them it amounts to no tranfer. Such a transfer is a fraud against both existing and subsequent depositors. No one is entitled to the benefits of his fraud. A stockholder will not be permitted to substitute in his place an irresponsible person even as to future depositors. In case of a fraudulent transfer, he continues to be a stockholder as to depositors, and as to depositors who become such after such transfer.

Under section 1 of article 18 of the act creating the State Banking Department, stockholders are made individually liable to depositors for all moneys deposited therein. The only escape from such liability is by a transfer made in pursuance of section 3 of said act, which is quoted in full above. We have seen that a transfer, in order to relieve from such liability, must be a bona fide transfer. In the absence of such transfer the transferring stockholder remains, as to depositors past, present, and future, a stockholder. With knowledge that a bank is insolvent a stockholder has no right to substitute an irresponsible party in his place, even as to future depositors. Such a transfer is a fraud upon them as well as upon existing depositors. In McDonald *v.* Dewey, 202 U. S. 510 (26 Sup. Ct. 731, 50 L. ed. 1128, 6 Ann. Cas. 419), a majority of the Justices of the Supreme Court of the United States held that when a stockholder had "absolutely transferred stock prior to the failure, with knowledge of the bank's insolvency, to persons financially unable to respond to the assessment, and those transfers have been made on the books of the bank, he is liable only for such amount of the assessment as may be necessary to satisfy creditors at the time of the transfer." Three Justices, including Justices White, Mc-Kenna and Day, dissented, and the dissenting opinion was written by Justice White. This dissenting opinion seems to us to be unanswerable and to state the true law applicable in the instant case. The decision in that case construed section 5151 of the Revised Statutes of the United States, which makes shareholders in national banking associations "individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." The only difference between the Federal statute and our law is, that the former makes the shareholder in national banks liable for all its debts, while under our statute the liability is one in favor of depositors alone. We think that the decisions in National Bank *v.* Case, and Stuart *v.* Hayden, supra, fully support the dissenting opinion in McDonald *v.* Dewey. Besides, the reasoning of Justice White in his dissenting opinion is convincing. Reference to this dissenting opinion will establish its soundness, and that it is supported by persuasive authority.

The view we take of this matter is further supported by section

4 of article 18 of said act, which makes even a bona fide transferer of stock liable to depositors upon proof that his transferee was insolvent at the date of the failure of the bank, if the transfer was made within six months prior to the date of such failure. So we are of the opinion that a fraudulent transferer of stock in a bank chartered under the laws of this State is liable to the depositors for moneys deposited in the bank after the date of such fraudulent transfer.

3. Applying the above principles, the court did not err in over-ruling the demurrer to the petition in this case.

*Judgment affirmed. All the Justices concur.*

GILBERT, J., concurs in the result.