BENNETT, superintendent of banks, *et al. v.* AMERICAN
BANK AND TRUST COMPANY; *et vice versa.*

1. In virtue of section 20 of article 7 of the act approved August 16, 1919 (Acts 1919, p. 135), the State superintendent of banks issued an execution against a banking corporation organized and existing under the laws of this State, for $3600, as representing statutory liability of that bank as holder of 36 shares of the capital stock of another and insolvent banking corporation organized and existing under the laws of Georgia, said amount having been levied as necessary to pay off depositors in said insolvent bank. The bank first mentioned brought suit to enjoin enforcement of the execution, on the ground, among others, that the above provision of the statute under which the execution was issued was void as being in violation of the due-process clauses of specified provisions of the State and Federal constitutions. The superintendent of banks filed a demurrer to the petition, and an answer. The answer as amended alleged a counter-claim seeking to establish and recover the same statutory liability and amount, independently of the validity of the execution. The plaintiff filed a demurrer to so much of the answer as related to the counter-claim. The trial court overruled the demurrers interposed by the respective parties, and, at the conclusion of the evidence offered by both sides, directed a verdict for the plaintiff. The defendant excepted to the judgments adverse to him; and the' plaintiff filed a cross-bill of exceptions to the judgment overruling its demurrer to the defendant's answer as amended. In overruling the demurrer to the original petition attacking the execution, the trial judge held that the above-mentioned provision of the statute in virtue of which the execution issued was void as violative of the due-process clauses of the State and Federal constitutions. Upon review of this decision by the entire bench of six Justices, who are evenly divided in opinion, Russell, C. J., and Hill and Gilbert, JJ., being in favor of an affirmance, and Beck, P. J., and Atkinson and Hines, JJ., being in favor of a reversal, the judgment of the court below upon this question stands affirmed by operation of law.

Appeal and Error, 4 C. J. p. 649, n. 35; p. 1122, n. 35.
Banks and Banking, 7 C. J. p. 505, n. 90 New; p. 507, n. 17; p. 512, n. 65 New; p. 521, n. 59; p. 591, n. 60.
Constitutional Law, 12 C. J. p. 1239, n. 73 New.
Evidence 22 C. J. p. 617, n. 14, 18.

(*a*) The judgment holding the execution to be void, the injunctive relief and decree for cancellation should necessarily follow; and consequently the judgment overruling the demurrer to the original petition is affirmed.

(*b*) This renders it unnecessary to further consider assignments of error in so far as they relate to validity of the execution.

2. The superintendent of banks, appointed under the provisions of the banking act of 1919 (Ga. L. 1919, p. 135), has authority, under said act as amended by the act of 1922 (Ga. L. 1922, p. 63), to bring a suit against stockholders of a bank upon their statutory liability to depositors, as provided in section 1 of article 18 of the act of 1919, and is not limited to the remedy of issuing execution as provided in section 20 of article 7 of said act.

3. Section 23 of article 19 (Acts 1919, pp. 135, 201), which provides that no bank shall "subscribe for or purchase" any stock in other banks except as therein provided, does not deny the power of banks such as the defendant to acquire bona fide, in the usual course of business, shares of stock in another bank as collateral security for a valid debt, or the power to purchase such shares of stock at a sale for the purpose of collecting such debt.

4. If a bank accepts shares of capital stock in another bank in pledge as collateral security for the note of its customer, and subsequently, under exercise of a power of sale contained in the note evidencing the secured debt, sells the stock and becomes the purchaser thereof and receives from the bank a new certificate for the shares of stock in the name of such purchaser "as pledgee," the purchaser will become a stockholder in the bank issuing the shares of stock, within the meaning of article 18, section 7, of the act of 1919 quoted above, notwithstanding at the time of the sale there was a parol agreement between the pledgor and the pledgee that upon subsequent sale by the creditor of the shares of stock he would settle with the pledgor on the basis of the price which the shares of stock should bring at such sale.

5. The term "depositor," as used in section 2 of article 1 of the general banking act (Acts 1919, p. 135), means any person who shall deposit money or commercial paper in any bank, either on open account subject to check, or to be withdrawn otherwise than by check, whether interest is allowed thereon or not, and shall include holders of demand and time certificates of deposit lawfully issued. The depositors in this case who accepted time certificates did not thereby change their relation to the bank from that of depositors within the meaning of the above provision of the act.

6. The opinion of a witness may be given in evidence as to the insolvency of a party, provided it is accompanied by the facts upon which the opinion is founded. Sufficient foundation was laid in this case for admission of the opinion of the witness on the question of insolvency.

7. There was no error in overruling the demurrer to so much of the answer of the defendant as set up a cross-action against the plaintiff.

8. The court erred in directing a verdict for the plaintiff named in the original petition.

Nos. 5174, 5175. SEPTEMBER 20, 1926.

Equitable petition. Before Judge Crum. Crisp superior court. November 7, 1925.

On March 28, 1925, T. R. Bennett as superintendent of banks, acting under authority of the act of the legislature approved August 16, 1919 (Acts 1919, p. 135), as amended by the act approved August 14, 1920 (Acts 1920, p. 102), issued an execution against the American Bank and Trust Company on the basis of an assessment against "The American Bank and Trust Co., pledgee," as stockholder of the Bank of Donalsonville, Georgia. The execution stated that the American Bank and Trust Company, pledgee, appeared to be a stockholder of said Bank of Donalsonville, holding 36 shares of the par value of $100 per share, and that notice of said assessment had been given more than 30 days prior to the issuance of the execution as provided by law. The execution was duly levied. On July 4, 1925, the American Bank and Trust Company, alleging itself to be a banking corporation organized under the laws of this State, instituted an equitable action against the superintendent of banks and the levying offcer, to enjoin collection or enforcement of the execution and to have it decreed to be void and canceled. (As the levying officer was only a formal party, he will not be mentioned further in this statement of facts, and the word defendant will apply exclusively to T. R. Bennett as superintendent of banks.) The grounds of attack upon the execution, as alleged in the petition, were: (1) That the execution is void, because section 20 of article 7 of the act approved August 16, 1919 (Acts 1919, p. 135), upon which the execution was issued, is void as being contrary to the due-process clauses as contained in specified provisions of the State and Federal constitutions. (2) Because as a matter of fact there was no necessity for the levy of an assessment upon the stockholders of the Bank of Donalsonville, for the reason that at the time of the assessment the resources and assets of said bank were sufficient to pay in full all of the depositors of said bank, without any assessment upon the stockholders. (3) Because before and at the time of the levy of said assessment the petitioner was not the owner of any shares of the capital stock of the Bank of Donalsonville, but merely held the 36 shares of stock as a pledge for the payment of a debt due to it by Shingler. And further, that the transaction whereby the 36 shares of stock were received from Shingler as a pledge occurred subsequently to the passage of the act of August, 1919, and also after January 1, 1920, that being the

date upon which the act became effective; and therefore any attempt upon the part of petitioner and its officers to acquire capital stock in the Bank of Donalsonville would be ultra vires and void under the provisions of article 19, section 23, of said act, which would prohibit the petitioner from acquiring the capital stock in a banking corporation such as the Bank of Donalsonville.

The petition was amended by alleging, as additional reason why no assessment should have been made against petitioner, that prior to such an assessment and since September 18, 1923, the Bank of Donalsonville has settled with all of its depositors. These grounds were elaborated as follows: "That during the month of September, 1923, and thereafter, said bank issued its written obligation or promise to pay its then depositors in future installments as follows: ten per cent. at the expiration of 6 months, ten per cent. in 12 months, ten per cent. in 18 months, ten per cent. in 24 months, ten per cent. in 30 months, and 50 per cent. in 36 months; and that such note or obligation of the said bank was accepted by a large majority of the then depositors, the remaining depositors, who declined to accept this, being paid in full. Your petitioner contends that such action by said bank, and the consent thereto and acceptance thereof by the depositors therein, constituted a novation or change of the original contract of deposit, whereby said alleged depositors became merely common creditors, holding a debt against said bank. Petitioner avers that the consideration flowing to said bank was that by this means it was permitted and was able to continue business, and would thereby be able to serve the convenience of said depositors and the public, and that said depositors would thereby receive the continued service of said bank, and, by the method adopted, additional assurance that the amounts due them would be paid in full, which said bank at that time was unable to do. . . Your petitioner further shows that all of the aforesaid acts upon the part of said bank and said depositors were done with the knowledge and consent of the defendant, T. R. Bennett, and approved by him in his capacity of superintendent of banks of the State of Georgia." The defendant filed a general demurrer to the petition as a whole on the ground that it failed to allege a cause of action, and a general demurrer to paragraphs 10 and 11 of the petition, which set up that the petitioner

held 36 shares of stock merely as a pledge for an existing debt due by Shingler, and therefore the petitioner was not a stockholder of the Bank of Donalsonville in the sense that it could be held for the statutory stockholder's liability in that corporation. The ground of demurrer was that although the plaintiff might have held the 36 shares of stock merely as a pledge, it "is liable as a stockholder in the same manner and to the same extent as an outright owner, and the holding of the capital stock of a bank for the purpose of securing an existing indebtedness is not an ultra vires act." The demurrer was overruled.

The defendant filed an answer, admitting the formal paragraphs 1. to 5, inclusive, and denying all other material allegations. In the nature of a cross-petition the answer alleged, that, irrespective of the constitutionality of section 20 of article 7 of the act of 1919, "a liability exists against the plaintiff under the general laws of this State; and without abandoning the position that said act is constitutional, this defendant shows that the duty is imposed upon him by law to collect said stockholder's liability." There was a prayer for recovery of the amount of such liability. An amendment to the answer elaborated at length the grounds of cross-relief set out in the petition, and prayed for a judgment against the petitioner for $3600, with interest and costs. Said amendment contained the following allegations: "9. By way of counterclaim, this defendant shows that he is superintendent of banks for Georgia, and has been continuously since the 1st day of January, 1920, and that petitioner is indebted to him, as such, for the use and benefit of the Bank of Donalsonville and its depositors, in the sum of $3600.00, plus interest at the legal rate from March 28, 1925, by reason of facts more particularly hereinafter set out. 10. Petitioner, on December 21, 1922, had for some time been holding thirty-six (36) shares of the common stock of the Bank of Donalsonville, a State bank chartered by the State of Georgia on January 7, 1903, under the act of December 20, 1893, which carried into effect article 3 of the constitution of Georgia of 1877, said bank being located at Donalsonville, Georgia; that the par value of said stock is one hundred dollars ($100.00) per share, totaling thirty-six hundred dollars ($3600.00); that the said Bank of Donalsonville, on the 21st day of December, 1922, did at the request of petitioner issue to it stock certificate #223 covering said

thirty-six shares of stock, and that petitioner was then and has continuously since then been the legal owner and holder of the said· stock.   11. That on or about November 19, 1924, said defendant lawfully took control of the assets and management of said Bank of Donalsonville, and has continuously since said date had control and management of same, for the reason that said bank was at that time and has continued to the present date to be insolvent and unable to pay its creditors or depositors.   12.   At the time this defendant took over said bank, that is, November 19, 1924, it was necessary, and at all times since it has been necessary. that petitioner and all other stockholders of said bank pay the maximum 100% stock liability, in ·order that the depositors of said bank may be paid what is due them on ·said deposits.   13. Petitioner, as the owner and holder of the aforementioned thirty-six shares of stock of par value totaling $3600.00, is .indebted to said defendant as superintendent of banks of Georgia, in the said sum of $3600.00 for the use and benefit of the said depositors, and neither the said sum nor any part thereof has been paid, although same is overdue and payment has been demanded.  14.   It is the duty of the said defendant, as superintendent of banks for the State of Georgia, to collect the said sum from petitioner."

The petitioner filed a demurrer to so much of the defendant's answer as was in the nature of a cross-petition, on the ground that it failed to allege a cause of action· for the relief sought; and further, "that the method of enforcement of stockholders' liability provided by the act of 1919 is exclusive and said act supersedes all existing laws regulating banks and banking in this State."   The demurrer to the defendant's answer was overruled.   There was a demurrer to the defendant's answer as amended that was substantially similar to the above-mentioned demurrer to the original answer.   This demurrer also was overruled.   The case proceeded to a trial; and at the close of the evidence each party moved for the direction of a verdict.   The court directed a verdict for the plaintiff, upon which a decree was entered enjoining the defendant as prayed, and ordering a cancellation of the execution.   The defendant excepted, assigning error upon the overruling of his demurrer and upon the direction of a verdict for the plaintiff.   The plaintiff filed a cross-bill of exceptions, assigning error on the judgment overruling the demurrer to so much of the answer as

was in the nature of a cross-petition. Other facts sufficiently appear in the opinion.

*C. N. Davie, Luther Roberts, E. Smyth Gambrell,* and *Seward M. Smith,* for Bennett.

*Strozier & Gower,* contra.

ATKINSON, J. 1. The ruling announced in the first headnote does not require elaboration.

2. It remains to consider the case as made by the answer in the nature of a cross-petition. This counter-claim related to the same statutory liability for the benefit of depositors, to which the execution issued by the superintendent of banks referred. It was insisted that the office of superintendent of banks being a creature of the statute, and the statute having provided, in section 20 of article 7, a remedy by issuance of execution, to be employed by the superintendent of banks in collecting the statutory liability, that remedy was exclusive and therefore the superintendent of banks could not maintain a suit in the courts to recover such liability. The statutory liability arises under section 1 of article 18 of the act of 1919 (Acts 1919, p. 135), which in part declares that "each stockholder . . shall be . . individually liable, equally and ratably (and not one for another), to depositors of such bank for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock." This clause is substantially a restatement of a similar provision in the act of 1893 (Acts 1893, p. 70, section 8). Prior to that act there was no *general law* creating such stockholder's liability. *Wheatley* v. *Glover,* 125 *Ga.* 710 (3) (54 S. E. 626). Referring in part to the same liability, it is declared in section 7 of article 18 of the act of 1919: "The individual liability of stockholders . . shall be assets of such bank, to be enforced only by and through the superintendent of banks." In section 7 of article 7 of that act it is declared: "The superintendent shall collect all debts due and claims belonging to such bank." This part of the act was amended by the act of 1922 (Acts 1922, pp. 63, 65), where it was declared in part as follows: "For the purpose of executing any of the powers and performing any of the duties hereby conferred upon him, the superintendent may, in the name of the bank, institute, prosecute, and defend any and all actions, suits, and legal

proceedings . . upon any cause of action which is vested by law in such bank or in the stockholders or creditors thereof." These powers are separate and additional to the powers of the superintendent of banks to issue executions, as provided in section 20 of article 7 of the act of 1919, and should be construed as authorizing the superintendent of banks to maintain a suit against stockholders upon their liability to depositors as provided in such statute. This being so, the superintendent of banks is not limited by the act to the remedy provided in section 20 of article 7 for the issuance of executions. This ruling comports with the decision in *Sessions* v. *Bennett,* 155 *Ga.* 193, 196 (116 S. E. 300), where it was said: "While the act creating the department of banking of this State does not expressly declare that the title to claims due an insolvent bank, when the superintendent takes possession thereof for liquidation, shall vest in him, he is made by such act a quasi-assignee of all the assets of such bank. Ga. Laws 1919, pp. 138, 154, art. VII, §§ 1-28. The superintendent is a statutory receiver. *Bennett* v. *Wheatley,* 154 *Ga.* 591 (115 S. E. 83). Under our statute, the superintendent of banks does not occupy the position of an ordinary chancery receiver or arm of the court appointing him. He is a representative of the creditors of the bank and is a quasi-assignee, and as such may sue on claims due the bank either in his own name or in the name of the bank." See also *Newton* v. *Bennett,* 159 *Ga.* 426 (126 S. E. 242) ; *Anderson* v. *Bennett,* 160 *Ga.* 517 (128 S. E. 660).

Sufficient has been said concerning the act of 1919 as amended to distinguish the case from *State* v. *Western & Atlantic Railroad Co.,* 136 *Ga.* 619 (71 S. E. 1055), and similar cases. That case referred to a statute creating a tax, and concerning it it was held: "When the statute undertakes to provide adequate remedies, and those given do not embrace an action at law, a common-law action for the recovery of the tax as a debt will not lie." That ruling does not oppose the ruling made in the present case, which is founded on express provisions of the statute as amended, giving the superintendent of banks power to sue.

3. Another contention of the plaintiff was that it was not liable, because it was purely a banking institution created under the laws of this State and prohibited by the provisions of section 23 of article 19 of the general banking act (Acts 1919, pp. 135, 201)

from acquiring stock in the Bank of Donalsonville, and therefore its act in taking the stock of the Bank of Donalsonville was ultra vires and void, and could not be the basis of a stockholder's liability. The act above referred to provides that "no bank shall subscribe for or purchase any stocks" except as specified therein.

The facts of the case do not bring it within any of the exceptions, and it is not necessary to state them. The plaintiff bank, organized under the laws of this State, was engaged in the ordinary banking business, in the usual course of which it received, as collateral security for a debt, shares of the capital stock in the Bank of Donalsonville, which it subsequently sold under a power of sale and purchased, receiving a new certificate of stock, under private agreement to give the borrower the benefit of any subsequent sale it might be able to make of the stock. By this transaction the plaintiff did not "subscribe for or purchase" the shares of stock within the meaning of the foregoing statute. The words just quoted from that statute were used synonymously, and were intended to prevent banks from subscribing for shares of stock in another bank or purchasing such shares as an independent transaction, and not to deny power to a bank to accept in good faith shares of stock in another bank as collateral security for a valid debt, or to become the purchaser thereof at a sale had for the purpose of collecting such valid debt. In this view it becomes unnecessary to consider whether the statutory liability would attach to the plaintiff if the act of acquiring the stock had been ultra vires.

4.   There was evidence to the effect that the plaintiff was the holder of certificate number 223 for the 36 shares of the capital stock in the Bank of Donalsonville; that it acquired the stock in the following manner: The plaintiff received two certificates of stock of said corporation, one for 20 shares and another for 16 shares, from J. S. Shingler in pledge as collateral security to a promissory note executed by Shingler to the plaintiff. Payment of the note was in arrears, and the plaintiff was unable to find a purchaser at private sale for the shares of stock, and finally, under exercise of the power of sale contained in the note, exposed the shares of stock at public sale before the court-house door. By consent of Shingler the sale was without previous advertisement and upon an agreement between himself and the plaintiff that, if the

plaintiff should be the purchaser and it could subsequently sell the shares of stock, Shingler should have credit or an allowance for whatever the stock might bring. The plaintiff became the only bidder at the sale, and purchased the stock. After the sale there was no change in the certificates for a substantial time during which the cashier of the Bank of Donalsonville was requested to sell the shares of stock. They were not sold; but the plaintiff, fearing bankruptcy proceedings against Shingler, requested the Bank of Donalsonville to issue to the plaintiff the certificate number 223 covering the 36 shares of stock. The certificate was issued, and the plaintiff held it for about one year before the Bank of Donalsonville was declared to be insolvent and taken in charge by the superintendent of banks, being all the time unable to find a purchaser for it. The ledger of the Bank of Donalsonville showed that the plaintiff was the holder of this certificate number 223 for 36 shares of stock, and written in pencil immediately following the name of plaintiff on the ledger was the word "pledgee." It was a contention of the plaintiff bank that it was merely a pledgee of the stock and was not a stockholder within the meaning of the general statute creating stockholder's liability.

A statute was embodied in section 9 of the special act of 1889 (Acts 1889, pp. 522, 527), creating a charter for the Brunswick State Bank. It was there declared: "The stockholders . . shall be [liable] to the creditors of such corporation, . . individually . . equally and ratably, and not one for another as sureties, . . for all contracts and debts of said corporation, to the extent of the amount of their stock therein, at the par value thereof, respectively, at the time the debt was created, in addition to the amount invested in such shares." The above-quoted provision of the statute was involved in *Chatham Bank* v. *Brobston,* 99 *Ga.* 801 (2) (27 S. E. 790), which was a suit to recover the statutory liability of stockholders imposed by the charter of the Brunswick State Bank. It appears from the record of file in this court that several of the defendants whom the books of the bank showed to be stockholders were shown to hold the shares of stock only as collateral security, and that the trial judge held that the defendants were liable as holders of the stock, notwithstanding they held it only as collateral security. On review in this court it was held: "Where the charter of a bank imposes on all of its stockholders

personal liability to its creditors, such liability attaches as well to those who acquire a complete legal title to stock of the bank by having the same transferred to them as collateral security for debts due by the transferrers, as to those who purchase such stock outright." The statute creating the liability is so similar to the statutory liability clause contained in the act of 1919, supra, as to render the decision there made controlling in the present case. So, if it be conceded that the plaintiff held the stock only as collateral security, it must be held that it was a stockholder within the meaning of the general statute imposing liability upon stockholders of banks for the benefit of depositors. The foregoing ruling is put upon the construction of the statute imposing a statutory liability, which, according to the ruling in *Chatham Bank* v. *Brobston,* supra, applies to persons shown by the books of the bank to be stockholders, though the stock be owned in a limited sense such as collateral security for a debt, to the same extent as it may apply to such persons holding absolute title to the stock. In these circumstances the decision in the case of *Ullman* v. *Brunswick Title Guarantee &c. Co., 96 Ga.* 625 (24 S. E. 409), and other similar decisions, drawing distinction between the status of title to negotiable paper held as collateral security and title held absolutely, and applying such distinction to the facts of those cases, have no application to the question now under consideration.

5. The evidence showed that all of the unpaid depositors in the Bank of Donalsonville, for whose benefit the superintendent of banks was suing to recover the stockholders' statutory liability at a time when the bank was temporarily suspended, and in order that it might not be put in liquidation, entered into written agreements with the bank whereby each accepted time certificates for the amount of money each had on deposit, the form of the certificates being as follows:

"Bank of Donalsonville.                              ·No. 2699.

"Donalsonville, Ga., ............19............$............

"This certifies that.......has deposited in this Bank....Dollars. Payable to the order of......in current funds on the return of this certificate properly endorsed......months after date with interest at the rate of......per cent. per annum. No interest after maturity.              ......................Cashier."

It was contended by the plaintiff that this change in the char-

acter of deposits was such a novation as to create the relation between the bank and its depositors of common debtor and creditor, and to take such depositors without the class of depositors as contemplated in the statute for whom there should be the statutory liability by the stockholders. Under proper construction of the banking act (Acts 1919, p. 135, section 2 of article 1), there is no merit in this contention. It is there provided: "The term 'depositor' as used in this act means any person who shall deposit money or commercial paper in any bank, either on open account, subject to check, or to be withdrawn otherwise than by check, whether interest is allowed thereon or not, and shall include holders of demand and time certificates of deposit lawfully issued." This ruling is in harmony with the decision in *Lamar* v. *Taylor*, 141 *Ga.* 227 (6) (80 S. E. 1085), where it was held: "Holders of certificates of deposit are depositors within the meaning of the provision of the charter of a bank, imposing on stockholders a statutory liability, in addition to the full payment of the amount of their subscriptions, for the payment of depositors." See also Wilkes *v.* Arthur, 91 S. C. 163 (74 S. E. 361); Murphy *v.* Pacific Bank, 130 Cal. 542 (62 Pac. 1059, 1061); 22 Columbia Law Review, 175, note; Magee on Banks and Banking, 274-276.

6. The court excluded testimony of the witness VanLandingham to the effect that the Bank of Donalsonville was insolvent, on the ground that the testimony was a mere conclusion of the witness. The evidence was offered in connection with other testimony of the witness to the effect that he was cashier of the bank, and other testimony of the witness stating facts upon which the proposed statement was based. It is provided in the Civil Code (1910), § 5874: "Where the question under examination, and to be decided by the jury, is one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor; but if the issue is as to the existence of a fact, the opinions of witnesses, generally, are inadmissible." It was held in *Crawford* v. *Andrews*, 6 *Ga.* 244 (2): "The opinion of a witness may be given in evidence as to the insolvency of a party, provided it is accompanied by the facts upon which the opinion is founded." See also *Kirkman* v. *Ashford*, 145 *Ga.* 452 (5) (89 S. E. 411). It was erroneous to exclude the testimony from evidence.

7, 8. The rulings announced in the seventh and eighth headnotes do not require elaboration.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*