FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
BEASLEY, superintendent of banks.

No. 14083. APRIL 14, 1942.

730

*F. M. Bird* and *James E. Markham,* for plaintiff.

*Ellis G. Arnall, attorney-general,* and *E. L. Reagan, assistant attorney-general,* for defendant.

DUCKWORTH, Justice. The writ of error presents two major questions for decision, to wit: (1) Did the renewal of the charter make the Bank of Grantville one incorporated under the banking act of 1919, so that the amendment of 1935 applies to the liability of its stockholders to depositors? (2) Does the amendment of 1935 have a retrospective application?

■ Article 10 of the 1919 banking act authorizes any bank to renew its charter for a period of thirty years by filing application for such renewal with the secretary of State six months before the expiration of its charter. It requires that the application be published for four weeks, that a copy of same be transmitted to the superintendent of banks, and that he make an examination of the condition of the bank and make his recommendation to the secretary of State. The act authorizes the superintendent to recommend that the renewal be granted, or to recommend that it be not granted, either because of the unsatisfactory condition revealed by his examination, or because he thinks it inexpedient; and the renewal of the charter is granted or denied depending upon the recommendation of the superintendent of banks. These provisions of the act clearly indicate a legislative purpose and intention that all banks chartered before 1919 must look to the 1919 act for a renewal of their charter. It is manifest that the

legislature sought by such provisions to obtain a uniform banking system in this State. Since by virtue of the provisions of this act the continued existence of every bank upon the expiration of its charter depends entirely upon the terms and conditions set forth in this act, any bank the charter of which is renewed by meeting these conditions is in reality chartered under the 1919 act. In *Gormley* v. *Searcy*, 182 *Ga.* 675 (186 S. E. 737), the question propounded by the Court of Appeals was whether or not a renewal of a bank's charter under the banking act of 1919 brought the bank under the terms of that act, and the answer of this court was that the renewal did bring the bank under the terms of the banking act of 1919. In *Dobbs* v. *Federal Deposit Insurance Cor.*, 61 *Ga. App.* 502 (6 S. E. 2d, 375), while holding that an amendment of the charter under the 1919 act reducing the capital stock did not amount to chartering the bank under the 1919 act, it was said: "The renewal of a charter is virtually the grant of a new charter." The opinion of this court in *Barnett* v. *D. O. Martin Co.*, 191 *Ga.* 11 (11 S. E. 2d, 210), analyzes a number of decisions relating to the question of how much power can be conferred by charter provisions, and it is there demonstrated that no charter provision unauthorized by law or that would limit the State's reserved powers over corporations is valid. Extending the reasoning there made, it can be said that when the State by regular statutory enactment stipulates, as was done by the 1919 banking act, conditions upon which bank charters will be renewed, no conflicting provisions of previous statutes or of corporate charters will be allowed to prevail.

The defendant cites *McKemie* v. *Eady-Baker Grocery Co.*, 146 *Ga.* 753 (92 S. E. 282), where by a majority of this court it was held that the renewal of a corporate charter for an additional twenty years, the terms of the original charter providing for such renewal, was not a fundamental amendment of the charter, but merely projected the corporate existence for another term of twenty years. Mr. Justice Atkinson dissented, the substance of the dissent being that the State had supervision over corporations, and that by the terms of the statute and of the charter the State signified an unwillingness to grant existence for more than twenty years, and reserved the power at the expiration of the twenty-year period to re-examine all relevant matters and then decide whether or not the corporation would be given legal existence for another period

of twenty years. Mr. Chief Justice Fish concurred in this dissent. We think this dissent is sound, and states the true law applicable in such cases, and in substance it means that by the act of coming back to the source of its existence and obtaining authority to exist another period of years the corporation obtains in reality a new charter. Similar rulings were made by the majority in *Illges* v. *Empire Mills Co.*, 146 *Ga.* 761 (92 S. E. 285), and *Cathcart* v. *Cathcart Van & Storage Co.*, 175 *Ga.* 196 (2-a) (165 S. E. 58), Mr. Chief Justice Fish dissenting in the first case, and Mr. Justice Atkinson dissenting in both. Nothing ruled in *Garrison* v. *Marietta Trust & Banking Co.*, 155 *Ga.* 562 (118 S. E. 48), or *Huey* v. *National Bank of Fitzgerald*, 177 *Ga.* 64 (169 S. E. 491), conflicts with the ruling we now make. In both of those cases the statute providing for a revivor of charter was applied; and in the latter it was stated that the corporation was not deprived of its rights and property existing before the expiration of its charter. By the renewal of the charter in 1931 the Bank of Grantville was brought under the banking act of 1919, and became a bank incorporated under that act, as contemplated by the act approved March 15, 1935.

■ By the amendment approved March 15, 1935, that portion of the banking act of 1919 codified as section 13-1901, imposing on stockholders individual liability to depositors, was repealed. This stockholders' liability, though fixed by statute, is at the same time a contractual one. In *Crawford* v. *Swicord*, 147 *Ga.* 548, 551 (94 S. E. 1025), it was said: "Properly considered, a stockholder's liability for his stock and assessments thereon, though fixed by statute, should be regarded as contractual." In Coombes *v.* Getz, 285 U. S. 434 (52 Sup. Ct. 435, 76 L. ed. 866), the Supreme Court had under consideration provisions of the constitution of California, by one of which the directors of a corporation were made individually liable to creditors for all moneys embezzled or misappropriated by corporate officers. Another section reserved power to alter or repeal all laws concerning corporations. Creditors who contracted with the corporation while these provisions were in force sued to enforce their rights against a director for money misappropriated by corporate officers. An appeal was taken to the State Supreme Court, and while that appeal was pending the above provision of the State constitution imposing liability

upon directors was repealed; and thereupon it was moved to dismiss the appeal, on the ground that the cause of action had abated by reason of the repeal of the provision of law upon which it was based. The State court sustained the motion and dismissed the appeal, and on review the decision of that court was reversed, the Supreme Court saying: "The creditor extended credit to the corporation; and his action in so doing, under the State constitutional provision, brought into force for his benefit the constitutional obligation of the director, which, by becoming a director, the latter had voluntarily assumed and thereby, in the eye of the law, created against himself a contractual liability in the nature of a suretyship. . . Doubts which otherwise might have existed in respect of the character and effect of the transaction are no longer open. It is settled by decisions of this and other Federal courts . . that, upon the facts here disclosed, a contractual obligation arose; and the right to enforce it, having become vested, comes within the protection of both the contract impairment clause in art. 1, § 10, and the due-process of law clause in the fourteenth amendment."

In Richmond v. Irons, 121 U. S. 27, 55 (7 Sup. Ct. 788, 30 L. ed. 864), the case involved the question whether the individual liability of stockholders in national banks survived as against the administrator of the estate of a stockholder; and it was said: "Under that act the individual liability of the stockholders is an essential element in the contract by which the stockholders became members of the corporation. It is voluntarily entered into by subscribing for and accepting shares of stock. Its obligation becomes a part of every contract, debt, and engagement of the bank itself, as much so as if they were made directly by the stockholder instead of by the corporation. There is nothing in the statute to indicate that the obligation arising upon these undertakings and promises should not have the same force and effect, and be as binding in all respects, as any other contracts of the individual stockholder." The liability under the national-bank statute referred to is one imposed upon stockholders in an amount equaling the amount of their shares, and is in favor of all creditors of the bank. In *Newton* v. *Bennett,* 159 *Ga.* 426 (126 S. E. 242), it was recognized that the national banking statute and our 1919 banking act are similar as to liability of stockholders, except that

the former covers all debts of the bank and the latter only claims of depositors. The liability in each case is imposed by statute, and becomes a vested right of those in whose favor the liability is created by the act of the shareholder in becoming the owner of the stock. Therefore the right of those for whose benefit the liability is created is protected by both the State and the Federal constitutions in the same manner and for the same reason. In Concord First National Bank v. Hawkins, 174 U. S. 364, 372 (19 Sup. Ct. 739, 43 L. ed. 1007), one national bank was charged as a stockholder in another national bank, and it sought to escape liability as a stockholder upon the argument that the claim to the benefit of the liability was exclusively statutory. After citing cases bearing upon the authority of the bank to acquire stock in another bank, the court said: "In the present case it is sought to escape the force of these decisions by the contention that the liability of a stockholder in a national bank to respond to an assessment in case of insolvency is not contractual, but statutory. Undoubtedly the obligation is declared by the statute to attach to the ownership of the stock, and in that sense may be said to be statutory. But as the ownership of the stock, in most cases, arises from the voluntary act of the stockholder, he must be regarded as having agreed or contracted to be subject to the obligation." In Whitman v. Oxford National Bank, 176 U. S. 559 (20 Sup. Ct. 477, 44 L. ed. 587), it was held that though the liability of stockholders in the State of Kansas was statutory in origin, it was contractual in its nature.

In *Bank of Norman Park* v. *Colquitt County,* 169 *Ga.* 534 (5) (150 S. E. 841), this court was dealing with an act of 1927 which repealed the priority of county deposits provided for in the banking act of 1919. It was held that the provisions of the 1919 banking act entered into and became a part of the contract between the bank and the county as to all deposits made before the effective date of the 1927 act, and that as to these rights the 1927 act had no effect. Thus it follows from the above authorities that the stockholders' liability to depositors in banks chartered under the banking act of 1919 was a vested right of all depositors in such banks as to deposits made before the effective date of the 1935 amendment; and that although this right is conferred by statute, it is nevertheless a contractual one, and is entitled to the protection of the contract and due-process clauses of the State and the Fed-

eral constitutions. The State constitution (Code, § 2-103) declares: "No person shall be deprived of life, liberty, or property, except by due process of law." The constitution of the United States (Code, § 1-805) declares, in part: "No person shall . . be deprived of life, liberty, or property, without due process of law." Thus it appears that any alteration or destruction by the 1935 amendment of the rights of depositors of the Bank of Grantville to the benefit of stockholders' liability on deposits made in that bank before the effective date of that amendment would be violative of the due-process clauses of the State and the Federal constitutions. After the amendment became effective, subsequent deposits were clearly not protected by the stockholders' liability which the amendment repealed.

To construe the amendment to relieve the stockholders of their liability as to deposits made before the amendment would be to give to that amendment a retrospective application, and thereby impair the obligation of contracts. The State constitution (Code, § 2-302) declares: "No . . retroactive law, or law impairing the obligation of contracts, . . shall be passed." The United States constitution (Code, § 1-134) declares: "No State shall . . pass . . any . . law impairing the obligation of contracts." These constitutional inhibitions stand as an absolute bar to a retrospective application of the 1935 amendment. There is a possible intimation in the 1935 act of an intention to give to that act a retrospective application, in that it provides that "This act . . shall not affect banks or the liability of the stockholders of banks which have, before the approval of this act, been taken over by the superintendent of banks for liquidation." Ga. L. 1935, pp. 103, 105. This provision, however, merely states one circumstance where the act shall not apply; but if it be conceded that this language authorizes a construction that would give the act a retrospective application, it is nevertheless true that there is no language in the act that imperatively demands a construction that would give it retrospective application, and the act as a whole will bear a construction that gives it a prospective application only. Statutes equally susceptible of two constructions, one of which would render it constitutional and the other unconstitutional, must be given that construction which will harmonize it with the constitution. *Fordham* v. *Sikes*, 141 *Ga.* 469 (81 S. E. 208);

*Cutsinger* v. *Atlanta,* 142 *Ga.* 555 (3) (83 S. E. 263, L. R. A. 1915B, 1097, Ann. Cas. 1916C, 280) ; *Blackshear Mfg. Co.* v. *Talmadge,* 173 *Ga.* 703 (2) (161 S. E. 256) ; *City of Newnan* v. *Atlanta Laundries_ Inc.,* 174 *Ga.* 99 (3) (162 S. E. 497) ; *Evans* v. *Evans,* 190 *Ga.* 364 (9 S. E. 2d, 254). The Code, § 102-104, declares: "Laws prescribe only for the future; they can not impair the obligation of contracts, nor, usually, have a retrospective operation." In *Smith* v. *Pindar Real Estate Co.,* 187 *Ga.* 229 (3) (200 S. E. 131), citing as authority for the statement *Moore* v. *Gill,* 43 *Ga.* 388, and *Bank of Norman Park* v. *Colquitt County,* 169 *Ga.* 534 (2) (150 S. E. 841), it was said: "The settled rule for the construction of statutes is not to give them a retrospective operation, unless the language so imperatively requires."

In *Morris* v. *Interstate Bond Co.,* 180 *Ga.* 689 (180 S. E. 819), a provision in the act of 1931, authorizing the release from tax lien of specific property by paying its pro rata share of taxes, was held unconstitutional in that it impaired the obligations of a contract wherein a tax execution had been purchased before the effective date of the act. In *Atlantic Loan Co.* v. *Peterson,* 181 *Ga.* 266 (182 S. E. 15), it was held that the act there dealt with would not be given a retrospective application, because to do so would render it unconstitutional. In *Maynard* v. *Marshall,* 91 *Ga.* 840 (2) (18 S. E. 403), it was held that amendments of previous statutes must be construed as intended to have operation on future transactions only, and as having no retrospective purpose not plainly expressed in the amendment. To the same effect, see *Long* v. *Gresham,* 148 *Ga.* 170 (2) (96 S. E. 211). While recognizing the principle declared in *Mills* v. *Geer,* 111 *Ga.* 275 (36 S. E. 673, 52 L. R. A. 934), that only such laws as affect substantial rights come within the constitutional inhibition against retrospective legislation, we hold that the 1935 amendment has no retrospective application; for to give it such application would impair the obligation of contracts, and would destroy substantial rights of depositors, and it is susceptible of a construction that gives it only prospective application and thereby renders it constitutional.

Having thus construed the 1935 amendment, what is the effect upon the deposit claims asserted by the plaintiff? Only deposits made before the 1935 amendment are protected by the stockholders' liability; and if, by checking on such deposit, the depositor with-

drew an amount equal to all deposits made before the 1935 amendment, there could be no valid claim against the stockholder for the benefit of funds deposited after the 1935 act. The applicable rule for ascertaining whether funds on deposit when the bank closed in 1935 were deposits made before or after the amendment was approved may be stated as follows: "The first drawings out are to be attributed to the first payments in." Stockholders of the Peoples Banking Co. *v.* Sterling, 300 U. S. 175, 184 (57 Sup. Ct. 386, 81 L. ed. 586).

*Judgment reversed. All the Justices concur.*